[No. 19864. Department Two. July 15, 1926.]

# F. A. SMALL, *Respondent,* v. THE CITY OF SEATTLE et al., *Appellants.*[1]

[1] MUNICIPAL CORPORATIONS (194, 478)—PUBLIC IMPROVEMENTS—DEFECTS OR OBSTRUCTION IN CHANGE OF WATER COURSES—PERSONS LIABLE. Where a street improvement involving sluicing operations augmented the flow of water, causing damage to property, the contractor cannot lay the blame upon a railway company· in not providing sufficient openings through its grade, where the openings maintained were sufficient to take care of the water under usual conditions.

[2] SAME (194, 478). Where a dredging company is given an alternative as to the method for moving earth, it is liable for damage done by sluicing which could have been avoided by another method.

[3] SAME (409)—TORTS—PUBLIC CONTRACTS—PERFORMANCE UNDER SUPERVISION OF CITY—LIABILITY. Where the city sanctions the making of an improvement by sluicing and the work is done according to the specifications, the city cannot evade liability for damage to property on the theory that the work was let to an independent contractor.

[4] SAME (567)—CLAIMS—VARIANCE BETWEEN NOTICE AND CLAIM. There is no material variance between a claim against the city for damage to flooding property by "overflowing" the basement, and proof that the water came into the basement by seepage through the city's sluicing operations.

Appeal from a judgment of the superior court for. King county, Griffiths, J., entered October 31, 1925, upon findings in favor of the plaintiff, in an action for damages to real property resulting from the performance of a public improvement contract, tried to the court. Affirmed.

·*Thomas J. L. Kennedy* and *Arthur Schramm,* for appellant City of Seattle.

*Roberts & Skeel,* for appellant Puget Sound Bridge and Dredging Company.

[1]Reported in 247 Pac. 925.

*Shorett, McLaren & Shorett* and *Edward R. Taylor,* for respondents.

PARKER, J.—The plaintiff, Small, seeks recovery for damages to his dwelling house, which he claims resulted from negligent sluicing operations carried on by the defendant dredging company and sanctioned by the defendant city in the construction of city local improvements. The case proceeded to trial upon the merits in the superior court for King county, sitting without a jury, resulting in findings and judgment awarding recovery to Small as against both the city and the dredging company, from which they have both separately appealed to this court.

On March 30, 1923, the dredging company contracted with the city to improve approximately a mile of Ninth avenue south and small portions of other adjacent streets, by grading and paving. This portion of the avenue lies along the easterly edge of the tide flats to the south of the city. The natural surface of the avenue being below the grade of that which the city established for its improvement, its grading, under the contract, was filling up to the city's established grade. On the same day, the dredging company contracted with the city to improve certain city property lying upon the hill above the portion of Ninth avenue to be so improved. This hill improvement called for the removal and wasting of a large quantity of earth. While these two contracts were entirely separate as to the rights and obligations of the contracting parties, it is plain that they were awarded by the city to one concern, the dredging company, with a view of the efficient and economical carrying on of the work of both at the same time, in that the wasted earth from the hill improvement could be used in the filling of the Ninth avenue improvement. The specifications for the

Ninth avenue improvement provided, among other things, that "the fill shall be made by hydraulic methods or by sluicing into place if delivered as dry earth;" thus giving to the dredging company the choice of methods of bringing the earth to the Ninth avenue fill, the city sanctioning either method.

The extreme southern end of the Ninth avenue improvement is at Spokane avenue, which runs east and west. Small's house is situated near Seventh avenue, four blocks farther south. It has a basement with concrete walls which has always been dry and free from water, though the floor of the basement is about on a level with high tide. The ground on which the dwelling sets appears to be filled-in ground of a sandy porous nature in which water readily maintains a common level. The O. & W. railway tracks entering the city from the south run along Fifth avenue; that is, four blocks west of and parallel with Ninth avenue. These tracks are on a grade which prevents the free flow of water from east to the west out to the bay, other than through an opening in the railway grade nearly directly west of Small's house, in the course of which is apparently a natural slough, which carries the water flowing from east to west across the railway and has apparently always been sufficient to take care of all of the waters accumulating on the east side of the railway, up until about April 24, 1923. In addition to the natural accumulation of water on the east side of the railway, there was a period of some three months' extra sluicing water used in the improvement of Sixth avenue and also certain waste water from a city reservoir upon the hill, all of which was able to escape through the opening in the railway grade without damage to Small's house.

Such were the conditions in the neighborhood on about April 24, 1923, up to which time Small's base-

ment had not been invaded with water. On that day the dredging company commenced sluicing earth from the hill-to the Ninth avenue improvement. This was accomplished by the use of a 24-inch main under pressure. The water so used was brought by the dredging company from Lake Washington over the hill from the east. This sluicing was continued without interruption for a period of six days; that is, up to May 1, 1923. In order to escape, this large surplus of water also had to find its way out to the west through the slough through the railway grade at Fifth avenue west of Small's house. That opening did not prove sufficient for the escape of the water as so augmented in quantity, and therefore the low ground east of the railway grade, extending to within some one hundred and twenty feet of Small's house, became more or less inundated, thus bringing the level of the water some eighteen inches above the level of the floor of his basement and the invasion of his basement with water at approximately that depth. This water caused damage to the foundation walls of the house and also to Small's furnace in the basement, for which recovery was awarded to him.

It is contended in behalf of the dredging company that it should be exonerated from all liability to Small, because the evidence does not support, indeed negatives, as it is claimed, the conclusion that the water it used in its Ninth avenue sluicing caused the damage to Small's house. This contention seems to be rested principally upon the testimony of Small, wherein he seems to say that the water came from the north towards his house through an opening in the Spokane avenue grade at Sixth avenue. It is plain that the water used in the sluicing of the Ninth avenue improvement did not come through that opening in the grade

of Spokane avenue, but came through an opening in the grade of Spokane avenue at Seventh or Eighth avenue. In other words, there were two openings in the grade of Spokane avenue, and Small seems to have been mistaken as to through which one the water from the Ninth avenue sluicing came south. The water from the sluicing of the Sixth avenue improvement came through the opening of the grade of Spokane avenue at Sixth avenue. These waters, however, and all waters coming from the north to the south and southwest towards the opening in the railway grade united in the slough a short distance south of Spokane avenue. The fact remains that the sluicing water from the Ninth avenue improvement was the surplus water which caused the inundation of several blocks of territory between Small's house and the railway grade; that is, had not the dredging company added to the water then seeking an outlet through the slough and the opening through the railway grade, the water would not have invaded Small's basement. We, therefore, think that the mistake of Small, in assuming that the water came through the Spokane avenue grade from the north at Sixth avenue instead of at Seventh or Eighth avenue, is of no controlling force in our present inquiry.

[1] It is further contended that the fault lay with the railway company, rather than with the dredging company, in that the railway company had not provided sufficient openings through its grade on Fifth avenue and its grade for its other tracks at First avenue. The answer to this, we think, is that the openings maintained by the railway company were sufficient in size to take care of all waters seeking outlet up to April 24, 1923, and prevent resulting damage to Small's house. The railway company was not bound to anticipate that the flow of water through its openings would

be augmented to the extent that was done by the dredging company.

Contention is made in behalf of the dredging company that it, in no event, is liable for all of the damage to Small's house, because the water from its sluicing of the Ninth avenue improvement was only a portion of the water which caused such damage. The argument seems to be that a portion of the damages, in any event, ought to have been assessed against the contractors who were filling the Sixth avenue improvement by sluicing. We think, under the evidence, the court was fully warranted in apportioning all of the damage as against the dredging company and the city. When the dredging company commenced its sluicing operations on April 24, 1923, it seems plain that Small's basement was not threatened with invasion by water. In other words, had the dredging company not then commenced and carried forward its sluicing operations on such an extensive scale, Small's basement would not have been invaded with water at all.

[2] Some contention is made in behalf of the dredging company that it, in no event, should be held liable, because it was doing the work as an independent contractor, according to plans and specifications prepared by the city. We have seen that the dredging company was entirely free to bring the earth to the Ninth avenue improvement, either by sluicing or as dry earth, sluicing it into place thereafter, which, of course, would require very much less water. This, we think, is sufficient to render it liable for the damage. The conveyance of the earth by sluicing operations was not doing something that it was necessary for it to do in the construction of the improvement. The sluicing was a mere alternative means to an end; it was not the end which the city contracted to have the dredging company accomplish.

[3] It is contended in behalf of the city that it in any event should not be held liable to Small for the damage to his house, because the dredging company was an independent contractor. This contention, we think, is not well founded, in view of the city sanctioning the conveyance of the earth to the Ninth avenue improvement by sluicing process. This it manifestly did by the express provision of the specifications above noted; and besides, it is manifest that the city had an inspector upon the work watching its progress, who had full knowledge of the dredging company so using the sluicing process for conveyance of the earth and also had full knowledge of the possibility of damage from the turning loose of such a large volume of water in that neighborhood continuously for a period of six days, especially in view of the fact that the slough outlet through the grade of the railway on Fifth avenue was manifestly already nearly taxed to its limit. We do not think that the city ought to be permitted to escape liability merely because the dredging company was acting for it, generally speaking, as an independent contractor.

[4] It is further contended in behalf of the city that the claim of damage filed by Small with the city council, upon which he commenced this action, is defective as a basis of recovery therein; this, because in that claim he stated that the water "overflowed the claimant's property . . . filled the basement beneath said dwelling to a depth of eighteen inches." The argument seems to be that, because the evidence showed that the water came into the basement by seepage, that is, by merely maintaining, because of the porous nature of the ground, its level in the basement the same as outside, such was not an overflowing into the basement. We do not think that this is a substan-

tial variance between the proof and the claim, and that the city was not misled thereby. See *Murray v. Seattle*, 96 Wash. 646, 165 Pac. 895, and our numerous previous decisions therein cited.

The judgment against both the city and the dredging company is affirmed.

TOLMAN, C. J., MACKINTOSH, MITCHELL, and MAIN, JJ., concur.