[No. 20491.   Department Two.   August 22, 1927.]

Solastic Products Company, *Appellant,* v. The City of Seattle, *Respondent.*[1]

[1] Municipal Corporations (566)—Claim for Injury — Notice — Sufficiency—Variance.   Liberally construing an ordinance requiring the filing of claims against a city, where there has been a *bona fide* attempt to comply with it, it is not a variance between the claim and the complaint or proof to claim damages to lands overflowed by the city in making an improvement, caused by sluicing operations at a specified time, believed by the claimant to be the cause, and to sue for and prove damages by an overflow caused by failure to provide facilities for taking off the water, diverted by a fill made through the city's prior sluicing operations.

Appeal from a judgment of the superior court for King county, Moriarty, J., entered June 30, 1926, in favor of the defendant, notwithstanding the verdict of a jury in favor of the plaintiff, in an action for dam-. ages to real property resulting from the performance of a public improvement contract.   Reversed.

*Roberts & Skeel, O. R. Holcomb,* and *Glen E. Wilson,* for appellant.

*Thomas J. L. Kennedy* and *J. Ambler Newton,* for respondent.

Askren, J.—The plaintiff brought this action against the city of Seattle, claiming that it is engaged in conducting a paint factory and business, at 3018 Ninth avenue south, in that city; that, prior to December 15, 1924, the city changed the grade of Ninth avenue south by filling in the street with mud taken from Beacon Hill; that prior thereto the natural surface waters from Beacon Hill and the drainage therefrom ran into the tide flats and from there into Puget Sound;

[1]Reported in 258 Pac. 830.

that the city, in its sluicing operations, performed the same in a negligent manner, in that it failed to make proper provisions for carrying away the surface waters and constructed a culvert for that purpose which was wholly inadequate; that the culvert was allowed to clog up and become completely obstructed, causing an overflow of surface water which ran onto the plaintiff's property and destroyed goods, to its damage, in the sum of $2,463.50.

A second cause of action also alleged damages in the sum of $607.91, and charged that, south of plaintiff's plant, there is a natural spring or creek which was caused, through the failure of the city to make necessary provision for taking care of the overflow of waters in the filling operations, to flow into plaintiff's property, damaging it in the sum set out.

Upon trial, the jury found for plaintiff on both causes of action, but the trial court entered judgment for the city notwithstanding the verdict, upon the ground that the claims filed with the city council, as required by ordinance, were insufficient in this: That they did not "accurately locate and describe the defect that caused the damage."

The claims filed with the city council are conceded to be regular in every respect, except in this one particular. For that reason, we shall only set out that portion directly referring to the defect causing the injuries. The first claim recited:

"III

"That on the 15th day of December, 1924, the city of Seattle was, and now is, engaged in sluicing and changing the grades of various and sundry streets on Beacon Hill in the city of Seattle, and with the dirt and mud removed in said sluicing operations was engaged in filling various and sundry low lands and tide lands in and near the claimant's factory at 3018, 9th Avenue south, in the city of Seattle.

## "IV

"That in the course of said sluicing and in the course of tearing down portions of the west slope of Beacon Hill, said city of Seattle had caused water to be pumped thereon in enormous quantities, and that said water and mud ran over, onto and upon the property upon which claimant's factory is located. That thereupon claimant notified said city of Seattle that said factory was being flooded, and thereupon the said city of Seattle attempted to prevent the overflow of mud and water upon plaintiff's property.

## "V

"But the said city of Seattle on the 24th day of September, 1924, operated said sluicing operations in such a negligent and careless manner and without regard to the property of persons or corporations in or near the scene of said operations, and said city of Seattle failed to take proper care to divert said water and mud from claimant's property; that said paint factory and plant of claimant was, on said 15th day of December, 1924, flooded with water and mud.

## "VI

"That as a result of the overflow of surface water and mud as hereinabove alleged, and as the result of the negligence of said city of Seattle and conduct of said sluicing operations, this claimant has been damaged . . ."

The second claim recited:

## "III

"That for considerable time in the recent past the city of Seattle was engaged in sluicing and changing the grades on various and sundry streets on Beacon Hill in the city of Seattle, and with the dirt and mud removed in said sluicing operations was engaged in filling various and sundry low lands and tide lands in and near the claimant's paint factory in the city of Seattle.

## "IV

"That in the course of said sluicing and in the course of tearing down portions of the west portion of

Beacon Hill, said city of Seattle caused water to be pumped thereon in enormous quantities, and that said water and mud ran over, onto and upon the property upon which claimant's factory is located. That thereupon claimant notified the said city of Seattle that said factory was being flooded, and thereupon said city of Seattle attempted to prevent the overflow of mud and water upon claimant's property.

"V

"That the said city of Seattle failed to take proper and necessary steps to drain the water from claimant's property, and on the 1st and 2nd days of February, 1925, the rain and water collected around claimant's place of business in such quantities as to flow into claimant's property, damaging the plant and the paint factory and merchandise stored therein to the extent of $607.91.

"VI

"That as a result of the overflow of surface water and mud as hereinbefore alleged, and as a result of the negligence of said city of Seattle, and conduct of said sluicing operations and the negligence of said city of Seattle in failing to properly drain the vicinity of claimant's plant and property, made necessary by the various dams and fills by said city of Seattle in its disposal of the surplus mud and dirt from said sluicing operations, that this claimant was damaged . . ."

After these claims were filed and complaint drawn, the plaintiff ascertained that the sluicing operations had stopped some time prior to the damage, and so it filed a new complaint setting forth the facts heretofore set out.

[1] It will be noticed, that the difference between the claims filed with the city council and the complaint is that the claims allege the damage to be caused by water from sluicing operations, whereas the complaint alleges that the city failed to construct a sufficient culvert and properly care for it to take care of the

waters necessarily needed to be diverted, because of the fill made through the sluicing operations.

It is apparent at once that, while the claim and the complaint are not technically identical, yet they both refer to, and have their basis in, a common cause, to-wit: the sluicing operations and the making of the fill, which brought about a common result, i. e. a surplus of water which damaged plaintiff's property.   The evidence disclosed that, immediately upon the damage resulting, the city was notified and sent its engineer to correct the trouble, and it was fully conversant with the whole situation as it existed.   During the trial, the plaintiff offered to show that, shortly prior to the present damage, there had been a flooding of the property caused by the sluicing operations, and that, when the claims were drawn, it was believed by the witness, president of the plaintiff corporation, that the cause of the damage was the same, i. e., that the flooding came from the sluicing, rather than the failure to provide facilities for taking the water off.   This offer was refused.

We think the court erred in entering judgment for the city.   The claim filed by the appellant described the defect causing the damage as nearly as the appellant knew.   Its officers were not skilled engineers who could be expected to know the complete cause of the surplus water.   They knew their property was damaged by the accumulation of these waters and that such a situation had not occurred before the sluicing and filling; they knew that a similar condition had, a short time previous thereto, been caused by that act, and reasoned therefore that the same causes were still at work, and we think that an honest endeavor to describe the damage and the cause thereof should not be set at naught through a highly technical construction of the ordinance.

It is true, we have held that the requirements of the ordinance are mandatory, and will be enforced by the court, but certainly we must not allow the requirement of filing a claim, the purpose of which is to safeguard the city and give it timely notice, to become a pitfall to catch the unwary. What ordinary information and prudence dictates to reason as the cause for a damage, such as this, should be deemed a substantial compliance with the ordinance, else every claimant must hire experts and, at his peril, technically state each defect.

Respondent has relied upon a number of our decisions touching this question, where we have held the claim filed to be insufficient. A review of them here would be unprofitable, since each claim must be viewed with relation to the facts sought to be established. Suffice it to say that, in none of them, do we find a situation quite comparable to the one here presented.

We have adverted more than once to the necessity of viewing these claims with liberality, that the ordinance may not prove an instrument of oppression. In *Lindquist v. Seattle,* 67 Wash. 230, 121 Pac. 449, we said:

"It will be noted that the charter requires no more specific description of the injury than of the defect which caused the injury. The obvious purpose of the charter provision is to insure such notice as will enable the city, through its proper officials, to investigate the cause and character of the injury while the facts are comparatively recent, and thus protect itself against fraudulent or exaggerated claims. This court, in common with many others, has held that, where there is a *bona fide* effort to comply with the law, and the notice filed actually accomplished the purpose of notice as to the place and character of the defect in the street, it is sufficient though defective, if the deficiencies therein are not such as to actually be misleading. *Ellis v. Seattle,* 47 Wash. 578, 92 Pac. 431; *Hammock v. Ta-*

*coma,* 40 Wash. 539, 82 Pac. 893; *Falldin v. Seattle,* 50 Wash. 561, 97 Pac. 658. This court has also held that claims of this character are to be viewed with at least that liberality which is accorded to a pleading. *Hase v. Seattle,* 51 Wash. 174, 98 Pac. 370, 20 L. R. A. (N. S.) 938. These, and many other decisions which might be cited, show that this court has never adopted that Draconic strictness of construction which would sacrifice the just and reasonable purpose of the law to a technical exactness of terms, making it a pitfall for the ignorant and unskillful, rather than a reasonable protection against the fraudulent and designing.''

In *Small v. Seattle,* 139 Wash. 559, 247 Pac. 925, we held that a claim for damages caused by waters ''overflowing'' was sufficient, although the proof was that the damage was caused by ''seepage'' waters.

The evidence is clear that the claims were drawn carefully to comply with the ordinance; that they expressed the facts as nearly as could be obtained by the appellant; that they in no wise misled the city and that the city removed the cause of damage upon complaint being made.

The judgment is reversed, with instructions to pass on the motion for a new trial.

MACKINTOSH, C. J., MITCHELL, MAIN, and TOLMAN, JJ., concur.