[No. 33804.   Department One.   January 22, 1957.]

WILLIAM D. BARTEL, *Appellant,* v. DONALD W. BROCKERMAN
*et al., Respondents.*[1]

*Charles M. Stokes,* for appellant.

*Howe, Davis, Riese & Jones* and *Milburn D. Kight,* for respondents.

FINLEY, J.—This is an action for damages for personal injuries.  The significant facts may be summarized as follows:

Shortly after one a. m., on February 15, 1952, the plaintiff and two other persons were passengers in an automobile driven by defendant Donald W. Brockerman from a point in Seattle to a roadhouse, known as *Frenchy's,* on the outskirts of town.  Soon after they arrived at *Frenchy's,* the plaintiff wanted to leave.  He asked the defendant to transport him to Seattle.  Defendant requested him to wait in the car, stating that he (defendant) would be out shortly.  Plaintiff returned to the car and fell asleep.

[1] Reported in 306 P. (2d) 237.

About two hours later, defendant returned to the car. Allegedly, he was in an intoxicated condition. He was accompanied by his two other former passengers and three additional companions. All six persons got into the car, where plaintiff was still asleep. Defendant then proceeded to drive his car in a direction toward the Sand Point naval station. At one point on the return trip, the plaintiff managed to arouse himself sufficiently to warn the defendant of a certain turn in the road; but defendant failed to negotiate the turn, and the car proceeded straight ahead into a ditch. Allegedly, the injuries to the plaintiff for which he seeks damages were caused as a result of the accident.

Defendant's demurrer to the complaint was overruled. Defendant then answered, alleging contributory negligence, and also alleged that, at the time of the accident, plaintiff was an invited guest, or licensee without payment for such transportation; that, therefore, his action was barred by the *host-guest* statute. RCW 46.08.080. With the issues thus joined, the matter proceeded to trial.

At the conclusion of plaintiff's opening statement (which, substantially, was a statement of the facts as related and alleged in his complaint), defendant moved for dismissal of the lawsuit on the theory that plaintiff's opening statement showed that plaintiff had no cause of action. When the trial judge indicated that he would grant defendant's motion, plaintiff requested permission to amend his opening statement "to show the things that happened at so-called 'Frenchy's' to terminate the host-guest relationship." The trial judge refused to permit plaintiff to amend the opening statement, granted defendant's motion for dismissal, and entered judgment accordingly. The plaintiff appealed.

■ A trial court may direct judgment of dismissal on the opening statement of counsel for plaintiff. *Hamm v. Seattle*, 156 Wash. 274, 286 Pac. 657; *Carter v. King County*, 120 Wash. 536, 208 Pac. 5; and cases cited therein.

The granting of a motion sustaining a demurrer to a complaint produces results not nearly so drastic to a plaintiff. Granting a motion attacking an opening statement results

in a dismissal on the merits. The latter procedure is a summary and a final one, and the power of the trial court in this connection should be exercised sparingly, with great caution, and never without a fair opportunity for plaintiff's counsel to explain and qualify his opening statement. *Donnelly v. Paramount Organization, Inc.,* 109 N. J. L. 57, 160 Atl. 569, 83 A. L. R. 219; *McGovern v. Hitt,* 62 App. D. C. 33, 64 F. (2d) 156; *Home Loan Co. v. Scanlon,* 120 N. J. L. 544, 1 A. (2d) 23; 53 Am. Jur. 302, § 371. See, also: 83 A. L. R. 221; 129 A. L. R. 557.

The purpose of the particular procedure is to *reasonably expedite litigation; i.e.,* to save time and effort on the part of the courts and all concerned which might otherwise be wasted in a useless continuation of a non-meritorious lawsuit. *Strmich v. Department of Labor & Industries,* 31 Wn. (2d) 598, 198 P. (2d) 181.

In the instant case, the time necessary for counsel to amend his opening statement would probably have consumed no more than about five minutes. This could have been allowed by the trial judge without any serious violence being done to the underlying purpose of the procedure involved. Although it is beside the point in so far as this appeal is concerned, we will observe in passing that any amendment of the opening statement may or may not have resulted in a different ruling by the trial judge on the motion to dismiss.

We express no opinion one way or the other as to whether the plaintiff has or may be able to surmount the bar of the *host-guest* statute. However, in view of what we have said hereinbefore, and considering the reasoning of the above-cited authorities, we think that plaintiff's counsel should have been granted an opportunity to amend his opening statement. The judgment should be reversed, and the case should be remanded for further proceedings in accordance with the views expressed herein. It is so ordered.

DONWORTH, ROSELLINI, and FOSTER, JJ., concur.

SCHWELLENBACH, J. (dissenting)—Following the an-

nouncement by the court that it was ready to grant the motion to dismiss, the following colloquy took place:

"MR. STOKES: Then, would Your Honor, then, permit re-opening on the opening statement?

"MR. HOWE: I don't think that is proper, Your Honor. The opening statement was complete, conclusive in detail, and obviously, anything now will just be for the purpose of avoiding the proper ruling Your Honor has indicated.

"THE COURT: There is no allegation, as the Court reads the pleadings, which would enlarge upon the rights of the plaintiff, or would individualize the effect of this rule,— harsh though it may be.

"MR. STOKES: I would like, if Your Honor please, to place in the record a more detailed account of what happened at 'Frenchy's,' because evidently the thing which is the crux of this matter, here, and I had thought it was for evidence, rather than the opening statement, but I think, under the indicated ruling of the Court, I think I should have an opportunity to re-open, and then present that portion concerning what happened out there.

"THE COURT: Wouldn't what happened out there be as binding on the plaintiff as on the defendant? Here, the plaintiff went to sleep in the defendant's automobile, knowing what was going on, for a period of some two or three hours.

"MR. STOKES: Your Honor is assuming a fact not in evidence, 'knowing what was going on.'

"THE COURT: That was the testimony here, and in your argument you stated that conditions had changed, meaning, the Court understands, that the defendant driver was possibly drunk. The Court will assume that for this argument. Could the plaintiff go to sleep in this automobile and then rely upon the conditions that happened afterwards by way of defense that he had been asleep? He owes a duty to the driver of the automobile, or this defendant, it seems, as the defendant owed him a duty.

"MR. STOKES: That is exactly what I am trying to get the Court to give me a chance to prove. Whether or not that could happen under our laws. I think the question of the man being still asleep, it would be one of the crux, and germaine. It is a question of fact whether or not it takes it out of the host and guest.

"The Court's rule indicates, now going to the rule, indicates that is a matter, that he goes to sleep and that he is

negligent, and that the host-guest is still a bar against recovery.

"THE COURT: According to the decision cited, the guest must make some protest, object to the course of conduct of his host.

"MR. STOKES: If Your Honor please, the protest is merely for the purpose of contributory negligence.

"THE COURT: Yes, but here the plaintiff didn't make any protest. He went to sleep and stayed asleep almost to the time of the accident.

"MR. STOKES: Then that indicates that the Court, then, is saying that the fact the defendant went to sleep is more probative than the fact that the man was injured by the negligence of the defendant.

"THE COURT: No, the only weight the Court gives the fact that the plaintiff was asleep is the absence of any protest. It would be just the same as if he were wide awake and sat there and watched all that happened right up to the time of the accident. That was his responsibility to stay awake to protect his right.

"MR. STOKES: Then the Court has ruled that the defendant has no responsibility to protect him while asleep?

"THE COURT: No, the Court isn't passing on the negligence of the defendant. This motion goes to the negligence of the plaintiff, —

"MR. STOKES: Thanks.

"THE COURT: (Continuing)—in the course of conduct of the plaintiff, in other words, to avoid the effect of the host-guest statute.

"MR. STOKES: I did not understand that this stage would go to the negligence of the plaintiff.

"THE COURT: As the Court understands your statement, in the light of the law, there has been shown no exception to the rule governing the host-guest case.

"MR. STOKES: That's the reason we are moving at this time to re-open, to show the things that happened at so-called 'Frenchy's' to terminate the host-guest relationship.

"THE COURT: Your statement showed that the plaintiff wanted to return to Seattle, or his base. Your statement also shows that the defendant was willing to bring him back, but in the meantime, he told the plaintiff to get in his automobile and wait, and subsequent to that time there is no protest on the part of the plaintiff as to these arrangements and the testimony. The statement shows that the plaintiff was asleep at the time the automobile started in whatever direction it went, and the plaintiff made no protest until im-

mediately prior to the accident, when he woke up temporarily to state that 'there is a curve coming,' or something to that effect; so what happened at Frenchy's, as far as the court can see, wouldn't have any bearing on that particular point.

"MR. STOKES: Then the Court is saying no matter how long they stayed at Frenchy's, it would still be host-guest?

"THE COURT: As long as the plaintiff took advantage of the offer of the defendant to return him."

I agree with the majority that the power of the trial court to grant such a motion should be exercised sparingly, with great caution, and never without a fair opportunity for plaintiff's counsel to explain and qualify his opening statement. Here plaintiff's counsel was given every opportunity to advise the court as to the contents of his proposed amendment to his opening statement. Counsel did not indicate any fact which would change the status of the parties. He merely continued to argue the law.

I would affirm.