[No. 36237. Department One. December 20, 1962.]

L. B. FROHLICH, *Respondent*, v. METROPOLITAN CHEMICAL COMPANY et al., *Appellants.**

*Reported in 377 P. (2d) 443.

*John Ranquet,* for appellants.

*Merges, Brain & Hilyer (Edwards E. Merges,* of counsel), for respondent.

HILL, J.—Agency issues and evidentiary questions feature this action for damages caused by the breach of a contract to paint (or spray plastics) on an apartment house for $3,248, with a 10-year guaranty.

After paying $3,345.50, the apartment house owners, Mr. and Mrs. L. B. Frohlich, had a very unsatisfactory result; and a jury found their damages to be $4,800.

While the defendants urge that the damages are ex-

cessive, the principal issues before this court are raised by the contention of the defendants,[1] L. E. Littrell and his two corporations (Metropolitan Chemical Company and Coloron Coatings Corporation), that they were not parties to the contract and that the Frohliches had contracted only with Dean McCorkle, as an independent contractor.

This contention finds support in the language and form of the agreement dated February 5, 1959, hereinafter referred to as exhibit No. 1, which was signed only by McCorkle and which read, "I hereby agree to do the folling [sic] work on above Bldg. for the below mentioned price"; then followed five specific things which were to be done, the last of which was:

"*Fiftly* [sic]: Trawel [sic] our sand & Matrix materials over porch concrete surfaces and step levels. Spray around light well and roof opening.

"All work to be done in a workmanship manner and as neatly as possible.

"Complete job, labor and materials $3,248.00

800.00 down
_____

2,448.00 Balance on completion."

It was signed "Dean McCorkle." This was, however, written on the letterhead of Coloron, and the three checks that made up the $800 down payment were dated February 5 and made to Coloron as payee.

There was also another writing, hereinafter referred to as exhibit No. 2. It was on the statement form used by Metropolitan with the date "2/6/59" written at the top. It began:

---

[1] L. E. Littrell and Rosemary, his wife, and their marital community were defendants; but inasmuch as L. E. Littrell is the only defendant with whose actions we are concerned, we shall refer to him hereafter as "Littrell" and as though he were the only individual defendant.

The defendant, Coloron Coatings Corporation, will hereafter be referred to as "Coloron"; and the Metropolitan Chemical Company as "Metropolitan." It should be noted that in February, 1959, Littrell was doing business as Metropolitan Chemical Company, but thereafter the Metropolitan Chemical Company was incorporated and assumed all the liabilities of the existing business.

"2/5/59—This document constitutes a 10 year guarantee against the following flaws found in conventional coatings. I guarantee the following: . . ."

There follow certain specific items; and this, too, is signed "Dean McCorkle."

The work was done by McCorkle, commencing in late February or early March. The following checks in payment were all made to Metropolitan as payee: $1,000 on April 13; $500 on May 11; $500 on May 15;[2] these, with the down payment, total $2,800. Subsequently, there was a payment of $545.50 made directly to Littrell, after defects had developed in the work which Littrell agreed to remedy.

There is, however, much more than the letterhead, the statement form, and the checks to tie Littrell and his corporations into this transaction as principals.

The jury could have found that the Frohliches, desiring to have the outside of their apartment building refinished, obtained the name of Metropolitan from the telephone book, called the number listed, and were thereafter contacted by a salesman, Dean McCorkle, who was also the secretary of Coloron; that he took the Frohliches to the building where Metropolitan and Coloron occupied the same office; that there was a "big" Metropolitan sign on the front of the building; that McCorkle introduced them to Littrell as "our president"; and that they were entitled to infer that he was the manager of both Metropolitan and Coloron.

The jury could, further, have found that the Frohliches, Littrell, and McCorkle then discussed the proposed work; that Littrell agreed to the proposed terms before exhibit No. 1 was signed; agreed that the work would be guaranteed; and that after exhibit No. 2 was executed, it was approved by Littrell; and that when Frohlich complained about the work, Littrell said, "Don't worry about it. You have got a guarantee and I will see that it is taken care of."

There was evidence from which the jury could have found that McCorkle was the representative and agent of

[2]This particular item was not made payable to Metropolitan as payee, but was a bank draft payable to Mrs. Marie Frohlich and made payable to Metropolitan by her endorsement.

Littrell, Metropolitan, and Coloron; and that Littrell and his corporations were the principals with whom the contract was made. The basic issue of law was the admissibility of that evidence.

It was the position of the defendants that all of the evidence introduced to establish that the defendants were parties to the contract should have been excluded, as an attempt to vary a written contract by parol evidence, and the action should have been dismissed.

We have held, however, that the parol evidence rule does not prevent the introduction of oral testimony to show that a contract executed by and in the name of an agent is, in fact, the contract of the principal. The oral evidence does not contradict the writing because the agent remains bound by the contract, and the effect is merely to show that by virtue of the law of agency his signature also binds another. *First Nat. Bank of Kennewick v. Conway* (1915), 87 Wash. 506, 512, 515, 151 Pac. 1129; *Belt v. Washington Water Power Co.* (1901), 24 Wash. 387, 393, 64 Pac. 525; *accord, Genova v. Johnson* (1958), 213 Ore. 47, 53, 54, 321 P. (2d) 1050; Restatement, Agency (2d) § 149 (1958); 2 Williston, Contracts §§ 295 to 377 (3d ed. 1959).

The defendants cite as controlling, *Western Mach. Co. v. Northwestern Imp. Co.*, 254 F. (2d) 453 (C.A. 9th), 1958. That case involved a written contract for the sale of machinery, signed by the defendant as purchaser. In an action for the price, the defendant offered to prove that it signed as agent or surety for another company, then bankrupt. The circuit court held that by Washington law such evidence was excluded by the parol evidence rule, as the signature was part of the contract. The basic distinction between that case and the instant case is well illustrated by the following quotation from *Belt v. Washington Water Power Co., supra* (p. 393):

" . . . But it is said that the allegations of the complaint make the contract that of Norman alone, and that it was not proper to allow any oral evidence to vary the written instrument. *Shuey v. Adair*, 18 Wash. 188 (51 Pac. 388, 39 L. R. A. 473, 63 Am. St. Rep. 879), is relied upon to sustain this contention. In that case it was held simply that

oral evidence would not be allowed to be introduced by the maker of a promissory note, for the purpose of escaping responsibility himself, to show that he executed the promissory note in his own name as agent of another, though that fact were known to the payee at the time of the transaction. But that is a different proposition from the one under discussion, where the oral testimony is admitted for the purpose of showing that some one who is not disclosed by the agreement was actually a party to it. The court in *Shuey v. Adair* could not have intended to lay down the rule as applicable to the case here, for it quoted from § 449, Mechem on Agency, on the question of the admissibility of parol evidence to show intent, as follows:

" ' But although parol evidence may not be admissible to release the agent, it may be made use of to charge the principal. Thus the principal, as will be seen hereafter, may be charged as such by parol evidence upon a simple contract made by his agent, even though the contract gives no indication on its face of an intention to charge any other person than the signer. And this doctrine applies as well to those contracts which are required to be in writing as to those to whose validity a writing is not essential. This rule is not obnoxious to the principle which forbids the contradiction of written instruments by parol testimony, for the effect is not to show that the person appearing to be bound is not bound, but to show that some other person is bound also.' "

The defendants made a further attack on the admissibility of exhibit No. 2, *i.e.*, that it was unsupported by any consideration because, under the terms of exhibit No. 1 executed the day before the guaranty, the work was to be performed "in a workmanship manner and as neatly as possible." This contention is predicated on the circumstance that exhibit No. 1 is dated February 5 and that exhibit No. 2 is dated February 6 and, therefore, evidence independent transactions. Neither of the Frohliches could remember the exact date that exhibit No. 1 and exhibit No. 2 were executed; and, as we have indicated, exhibit No. 2 has two dates—one identical with that of exhibit No. 1. Mrs. Frohlich testified that before either instrument was executed, Littrell had orally agreed that the work would be guaranteed. There was evidence that exhibit No. 2 was not a new and separate agreement, but that exhibits No. 1 and 2

form the integrated expression of the agreement of the parties and are supported by the same consideration—the $800 down payment.

Exhibits No. 1 and 2 were admissible against the defendants, though in form and language they were the agreement and guaranty of McCorkle, because the testimony of the Frohliches and other evidence justified a finding that the defendants were parties to the contract evidenced by the exhibits, and, therefore, responsible in damages for the breach of that contract.

■ The further contention: That the checks given by the Froliches to Metropolitan and Coloron (exhibits No. 3, 4, 5, 13, and 16) were inadmissible as being immaterial in determining the issues presented, is without merit. It was not conclusive evidence that Metropolitan and Coloron were parties to the contract, but it was certainly evidence to be considered. The fact that the defendants

". . . were placed in a position of explaining some complicated book entries on its books of account. . . ."

in showing that the payments were received by McCorkle, is certainly no argument against the admissibility of the checks; and the jury obviously did not accept the explanation of the "complicated book entries."

■ We turn now to the less basic contentions of the defendants. They urge that the trial court should have instructed the jury to disregard the printed matter (letterheads) on exhibits No. 1 and 2, because the written portions of the agreements did not specifically refer to the printed material, citing as supporting authority *R. J. Menz Lbr. Co. v. E. J. McNeeley & Co.* (1910), 58 Wash. 223, 108 Pac. 621. That case, unlike the instant case, involved the interpretation of the *language* of a written contract, and not a determination of the *parties* thereto.

The evidence that exhibit No. 1 and exhibit No. 2 were written on the stationery of the defendant corporations did not prove that the corporations were the contracting parties, but it could be considered with other evidence in determining whether McCorkle was their agent and whether they were, or not, parties to the contract. The

trial court did not err in refusing to instruct the jury to disregard the letterheads.

■ The defendants' proposed instruction, which would have told the jury

"  .  .  .  that the mere use of stationery with printing on it is not sufficient by itself to establish that the business organization described in the printing is a party to any agreement,  .  .  ."

while a correct statement of the law was certainly a comment on the evidence when coupled, as it was, with the further statement that,

"  .  .  .  When it is intended to bind or include another person or business organization in an agreement, the person signing such an agreement should indicate by his signature his relation to the person or business organization for whom the agreement is signed."

The trial court did not err in refusing to give such an instruction.

The defendants also asked the trial court to instruct the jury to find for the defendants: (a) if the plaintiff unjustifiably prevents the performance "by any such defendant," or (b) if the damage was due to a failure of the structure or building rather than the paint job.

■ We do not reach the merits on these proposed instructions. They do not appear either in the defendants' requested instructions or the additional requested instructions. We find them only as a part of the motion for judgment n.o.v. or for a new trial. It is there urged that a new trial should be granted for failure to so instruct. That is, of course, much too late. The purpose of requested instructions is to give the trial court a chance to consider them before the jury is instructed.

As we reconstruct the situation, counsel was apparently trying to compose these requested instructions while taking his exceptions; but what he there orally stated to the court, as proposed instructions, differs somewhat substantially from what he put in writing as part of the motion for a new trial and now brings before this court.

Our Rule on Pleading, Practice and Procedure 51.04W

requires that proposed instructions be delivered to the trial judge when the case is called for trial; but provides further that proposed instructions, upon questions of law developed by the evidence which could not reasonably be anticipated, may be served and filed at any time before the court has instructed the jury. It is further provided that any proposed instruction, which is handed to the court at a time later than is provided by this rule, may be disregarded.

It seems clear to us that the proposed instructions were on issues which could have been anticipated, and that they were never "handed" to the trial court until a motion for a new trial was filed. A refusal to give these proposed oral instructions was clearly justified.

The defendants excepted to one paragraph of the instruction on damages (instruction No. 9), by which the jury was told:

"If your verdict is in favor of the plaintiff, the measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty."

Defendants again argue that there was no consideration for exhibit No. 2, and being inadmissible there was no evidence of a warranty, hence no basis for an instruction. We have already determined the issue of admissibility adversely to the defendants.

We find no exceptions to the other paragraphs of this instruction, but our examination of the record satisfies us that the testimony of Mrs. Frolich is sufficient evidence to justify that portion of the instruction referring to damages for "the loss of use, if any, of the stairs and balconies."

The defendants' assignment of error in regard to the last paragraph of instruction No. 5 will not be considered, since the instruction was not set out in the brief "in full," as required by RCW Vol. 0, Rule on Appeal 43, as amended (effective January 2, 1953).[3]

---

[3] ". . . No error assigned to the inclusion, omission, sufficiency, or insufficiency of an instruction or instructions, given or not given, will be considered unless such instruction or instructions, as the case may be, shall be set out in the brief in full. . . ."

Finding no prejudicial error, we affirm the judgment of the trial court.

FINLEY, C. J., WEAVER, and ROSELLINI, JJ., concur.

*Reported in 377 P. (2d) 258.