[No. 38783.    Department Two.    June 15, 1967.]

GEORGE IMPERO, *Respondent,* v. WHATCOM COUNTY, *et al.,*
*Appellants.*\*

\*Reported in 430 P.2d 173.

*Richard A. Nelle* and *Leslie A. Lee,* for appellant Whatcom County.

*Miracle, Treadwell & Pruzan,* for appellant Great Western Lumber Company.

*David E. Rhea,* for respondent.

DONWORTH, J.—Plaintiff, George Impero, was injured October 29, 1963, when he fell into a drainage sump which was located partly on a Whatcom County road right of way and partly on land owned by the Great Western Lumber Company.

Plaintiff filed a claim for damages against the county on December 12, 1963. At a regular meeting of the Board of Whatcom County Commissioners on December 13, 1963, the county rejected the claim.

Plaintiff thereupon instituted the present action in superior court against the defendant county, later joining defendant Great Western Lumber Company as a party defendant in an amended complaint. The trial was commenced February 17, 1965, and resulted in a jury verdict in the amount of $25,000 in favor of plaintiff against both defendants. After their respective motions for a new trial were denied, judgment was entered on the verdict against both defendants. Each defendant has appealed.

Appellant Whatcom County will be referred to as the county and appellant Great Western Lumber Company will be designated as Great Western.

The facts giving rise to the action are as follows: Great Western is the owner of property adjacent to the county right of way on Goodwin Road, a Whatcom County highway. Prior to May 12, 1961, a drainage problem existed on the land owned by Great Western, which resulted in some

overflow of water and mud onto the county road. At that time, drainage was provided for the county road by ditches along the right of way. Prior to that date, an oral agreement was reached between the county and Great Western whereby a new drainage system was to be constructed which would eliminate the drainage problem on Great Western property, as well as provide against the overflow

Exhibit No. 7

onto the county right of way. Under that agreement, Great Western was to provide the necessary materials, and the county crews were to plan the system and perform the work necessary to its installation. The work was completed on or about May 12, 1961.

The portion of the system involved in this action is a drainage sump, located in front of Great Western's office building. Its placement was such that the greater portion of it was on the county right of way. When asked the reason for selecting this location, Leroy C. Grunhurd, assistant county engineer who had been in charge of the installation of the drainage system, testified that it was because the close proximity of the lumber company's office building to the right of way prevented the use of heavy equipment to install the sump wholly on Great Western property. He testified that, in addition, placement of the sump nearer the office building would have damaged the sidewalks on Great Western property.

Physically, the sump consisted of a large hole into which a concrete tile approximately 36 inches in diameter was vertically placed. Several inches down from the top of the tile, on the inside, was a ledge or lip.[1] It was on this ledge that the cover, originally provided for the sump, rested.

Under the agreement with the county, Great Western was to provide and maintain an adequate cover for the sump. A cover was constructed, as noted above, to fit inside the tile on the ledge or lip. The cover itself was constructed of heavy mesh wire, additionally supported by two angle iron cross members.

Following the installation of the drainage system, it was discovered that this sump was not functioning properly due to the fact that the tile extended out of the hole, above the ground, approximately 6 inches, and hence surface waters could not get into it.

Great Western contacted the county, and requested that they correct the difficulty. This the county did by breaking

---

[1] A tile, similar to that used in the drainage sump, is illustrated by exhibit No. 7.

off that portion of the tile that extended above the ground. The result of this alteration, however, was that the lid was no longer securely held in place by the sides of the tile rising above the ledge on which it rested.

Respondent, George Impero, was an independent logger at Maple Falls. In the fall of 1963, he was selling logs to Great Western. On October 29, 1963, he contacted Great Western's bookkeeper, Mrs. Irene Benjamin, indicating a desire to check some of the records of log deliveries that had been made by him to Great Western. Because of Mrs. Benjamin's daytime work schedule, arrangements were made whereby Mr. Impero would pick her up at her home in Nooksack that evening and the two of them could go to Great Western's offices to check the records without interruptions.

Mr. Impero arrived at Mrs. Benjamin's home between 7 and 7:30 p.m., and they proceeded in his car from there to Great Western's offices. On their arrival, Mr. Impero

Exhibit No. 14

parked his car on the county right of way in front of the office, near a wooden sidewalk 8 feet long that leads directly to the office entrance (see exhibit No. 14) because the parking lot used by employees working on the night shift was full at the time.

About 9:15 p.m., after their business in the office was completed, Mr. Impero went ahead to the car while Mrs. Benjamin put away the records and locked them up. Both testified that it was dark in front of the office since there was no direct light in the outer yard. It was raining and windy.

In proceeding from the office to his car, Mr. Impero departed from the wooden walkway and went across the area to the right of the walkway, where the drainage sump was located.

On direct examination, Mr. Impero testified that:

She [Mrs. Benjamin] suggested that I drive up . . . there is a garage—as you drive up there there is quite an area between the buildings where you can turn around and come back down the road . . . I said that would be a good idea because she mentioned it was muddy on the road and raining, quite a bit of traffic there during the day that keeps kind of muddy, and she mentioned it was raining hard enough she would get her feet wet, she didn't want to, so I walked back out to the car and stepped off the sidewalk and started walking back to the door of my car and being left-handed I reached for the door of my car like that (demonstrating), stepped backwards to swing the door open and as they say, that was it. I disappeared—ended up in that sump.

Being unable to gain the attention of any of the mill-workers who were working in the mill, Mrs. Benjamin helped respondent out of the sump and, after assisting him back into the office building, called Dr. Spady of Everson.

After examining respondent, Dr. Spady referred the case to Dr. Rinne, a physician and surgeon in Bellingham, because he felt that respondent needed the attention of a specialist. An examination by Dr. Rinne disclosed a rupture of the Achilles' tendon. Since the Achilles' tendon does not replace itself, a surgical operation was arranged, and the ten-

don was sewn back together. The testimony of Dr. Rinne, who performed the operation, indicated, however, that despite the repair of the tendon, respondent probably would continue to experience difficulty in performing his logging operations.

Mr. Impero testified concerning his difficulty in working in the woods with the injured ankle, and that he was, accordingly, compelled to employ additional workmen in order to complete his contract with the United States Forest Service to cut and remove certain timber within a specified time.

Appellant Whatcom County first assigns as error the failure of the trial court to give its proposed instruction No. 10. Since no argument on this assignment is contained in the brief, *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 372 P.2d 193 (1962), and the proposed instruction is not set forth therein, *Frohlich v. Metropolitan Chem. Co.*, 61 Wn.2d 66, 377 P.2d 443 (1962), the court will not consider the assignment. Rule on Appeal 42(g)(1)(iii) and Rule on Appeal 43, RCW Vol. 0.

The county's second assignment of error relates to the trial court's failure to grant its motion for a new trial. In support of this assignment, appellant first contends that there was no evidence or reasonable inference from the evidence to justify the verdict and that it is contrary to law.

Its first argument in support of this contention is that the condition of the sump, which allegedly resulted in the injury to respondent, had not existed a sufficient length of time before the accident to give the county constructive notice.

This argument is answered fully by *Batten v. South Seattle Water Co.*, 65 Wn.2d 547, 398 P.2d 719 (1965), a case strikingly similar to the present case in many respects.

■ The *Batten* case involved an insecurely positioned lid of a water meter box which gave way when the plaintiff stepped on it, thereby causing her fall and the resulting injuries. The water meter box was installed by the county on the unimproved portion of the public right of way beyond the shoulder and drainage ditch, and next to a street signpost which was located in the street about 18 inches

from the property line. The lid was positioned in a slight recess, the top of the lid being flush with the top of the concrete rim, which, in turn, was generally flush with the surrounding ground. The lid, however, was too small, thus preventing a snug fit in the recess, thereby permitting a small amount of lateral movement and creating a crack around the lid where dirt and gravel could lodge. There was no direct evidence concerning the condition of the lid on the day in question other than that the lid had been in position earlier. The South Seattle Water Company was held liable for plaintiff's injury, although it was conceded that it had no notice that the lid of the box was out of place or otherwise insecure. It was held that, where the municipal corporation created the dangerous condition, no notice is required to be imparted to it as a prerequisite to liability for injuries resulting from such condition.

The same rule was followed by this court in the earlier case of *Russell v. Grandview*, 39 Wn.2d 551, 236 P.2d 1061 (1951), in which combustible gas had been pumped into the city's water system which resulted in an explosion in a water user's home. We there said:

> If . . . the dangerous condition is caused by agents of the city in the performance of their duties, the rule of liability is not based on notice and failure to repair, but upon the creation of a dangerous condition by the city. (p. 554)

A second argument in support of this assignment of error, urged by appellant county, is that the existence and location of this sump was as well known to respondent as to the county. Therefore, it is contended that the county cannot be held liable for injuries caused by dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant.

It is not denied by respondent that, in his business dealings with Great Western, he had visited the premises approximately twice a month during the installation of the sump, and knew of its location and existence. But there is nothing in the record to support the contention that he knew of the dangerous condition of the sump, *i.e.* that the

lid was insecurely positioned or that it was not on the sump on the night of the accident. The condition of the sump cannot be characterized as a known or obvious danger. This case is clearly distinguishable from those cited by appellant in support of its argument, such as *Caron v. Grays Harbor Cy.*, 18 Wn.2d 397, 139 P.2d 626, 148 A.L.R. 626 (1943), involving a loosely positioned ladder located in the office of the county clerk.

In the third argument, appellant county contends that the construction of this drainage system, being on private property, was completely ultra vires and void, since the construction was for private purposes and not done for the benefit of the county in any degree.

The county quotes the testimony of Roy Crabtree, an employee of appellant Great Western, and LeRoy Grunhurd, a county employee, for the purpose of showing that, prior to installation of this drainage system, adequate drainage was provided for the county property by ditches along the right of way. This appellant points out that Mr. Grunhurd testified that the ditches served that purpose better than the drainage system constructed on Great Western property.

■ Respondent, on the other hand, calls our attention to the fact that appellant county never raised the defense of ultra vires at the trial court level. The failure to urge this affirmative defense at the trial level precludes its consideration on appeal. *Metcalf v. Metcalf*, 57 Wn.2d 612, 358 P.2d 983 (1961), *Riblet v. Ideal Cement Co.*, 57 Wn.2d 619, 358 P.2d 975 (1961).

In any event, however, appellant's argument overlooks the fact that the ditches no longer exist, and that the present drainage system, though located substantially on Great Western property, in effect was *substituted* for the previously existing ditches along the county road. The county engineer testified that, prior to construction of the present system, the adjacent portion of the paved county road was often covered with water and mud. Under these circumstances, appellant's argument that the county has not been benefited by the construction of the drainage system, and

that no public purpose is served thereby, is wholly without merit.

A final argument in support of this assignment of error is made by appellant county to the effect that substantial justice has not been done. It is contended that it is not in pari delicto with Great Western, whose negligence, if any, was primary or active. Appellant county contends that its own negligence, if any, was passive only.

The argument is likewise without merit. The jury could believe from the evidence that the lid was not in place on the sump because of the removal of its supporting lip. That removal was accomplished by the county. It was that removal which created the dangerous condition of the sump. The commingling of fault is apparent. When the concurrent or successive negligence of two defendants is a proximate cause of an injury, each is liable regardless of the relative degree to which each contributes to the injury. *Ringaard v. Allen Lubricating Co.,* 147 Wash. 653, 267 Pac. 43 (1928).

Finally, appellant county assigns as error the failure of the trial court to grant its motion for judgment on the opening statement of respondent. The motion was based on the contention that respondent proceeded on a theory entirely different from that stated in his complaint against Whatcom County and in his claim filed with that county.

First, this court has held that a trial court may grant such a motion in a proper case. *Bartel v. Brockerman,* 49 Wn.2d 679, 306 P.2d 237 (1957). The granting of such a motion results in a dismissal on the merits. It is a summary and final procedure, and the power of the trial court in this connection should be exercised sparingly, with great caution, and should never be without a fair opportunity for plaintiff's counsel to explain and qualify his opening statement. *Bartel v. Brockerman, supra.* See annotation 5 A.L.R.3d 1405.

The particular flaw alleged here is a variance between the claim filed with the county and the case presented by respondent. Unless it can be said that such variance, if it

exists, precludes respondent's recovery against the county on the theory presented at the trial, the trial court's denial of the county's motion must be sustained.

The claim, filed by respondent against the county, alleged that:

On October 29, 1963, near Everson, Washington, claimant, with another, was proceeding from the premises of the Great Western Lumber Company. To do so, it was necessary for each to cross a tract of land which was either owned by Whatcom County or across which they had an easement and upon which they had constructed a ditch, installed drainage tile, surrounded the tile with rocks and gravel and had then covered the same with a screen of light material.

There was nothing to give notice of the fact that said screen was of insufficient strength to support an adult. Claimant, with no warning, or means of learning, the condition thereof, stepped upon such cover over said ditch, fell through and sustained severe sprains and injuries, particularly to the tendons of his right leg and ankle.

The claim, which was rejected by appellant county, was incorporated by reference in the original complaint filed by respondent against the county.

Thereafter, an amended complaint was filed joining appellant Great Western as a party defendant and alleging, in particular, that the sump was constructed at the request of Great Western, which assumed the duty of covering the opening created thereby and maintaining the entire drainage system thereafter. It alleged that the latter duty was not carried out, and that such failure was the proximate cause of the injury suffered by respondent.

In his opening statement, respondent's counsel stated that:

One of these drainage holes thus established by the County on what was largely County right of way, one of them was quite near the office. It was but a few feet from the sidewalk that went out straight from the building, and, of course, it was into that that George Impero fell that night. *It was not covered that night, and if it was it was certainly not a secure cover.* Another person,

in fact an employee of the Great Western Lumber Company that night without any knowledge that George Impero had fallen into the hole finds the lid off, and it is believed that this lid had been off on previous occasions, and of course, in our complaint we have alleged that this upon the highway constituted a dangerous condition as it was installed by the County and that the maintenance of it which we are told was to be assumed by the Great Western Lumber Company there was also negligence by the Great Western because they had not put an adequate cover on it. We allege that each was negligent, the one in putting in the hole, and not checking to determine that it was adequately covered after it was put in, and the Great Western in the manner in which they maintained it or inspected it . . . . (Italics ours.)

Thus, the county argues, respondent has presented two theories: one, in the claim filed against it, in that the cover provided was of insufficient strength; and the second, in the amended complaint against Great Western and in the opening statement, that the sump was not covered on the night of the accident, or was insecurely covered.

■ In *Keller v. Seattle*, 200 Wash. 573, 94 P.2d 184 (1939), we held that a city may not urge, as a bar to a recovery in an action against it for personal injuries, that there was a variance between the claim filed with the city and the case made in court where the claim gave sufficient notice of the time, place and general nature of the alleged accident. See annotation in 52 A.L.R.2d 966. See, also, *Solastic Prods. Co. v. Seattle*, 144 Wash. 691, 258 Pac. 830 (1927), where operations conducted by the city which resulted in damage to plaintiff were not described in the claim as they were in the later complaint based thereon.

The rule is applicable in the present case. That the claim alleged that the cover was of insufficient strength, while the opening statement alleged that it was insecurely positioned, is not a fatal variance. Consequently, the trial court's refusal to grant appellant county's motion for judgment of dismissal on the opening statement of respondent was proper.

In its assignment of error No. 1, appellant Great Western joins in the challenge to the sufficiency of the evidence and motion for nonsuit made by appellant county. Therefore, what we have said thus far is applicable to, and dispositive of, that assignment of error.

In assignment of error No. 2, appellant Great Western argues that the trial court erroneously refused to give its proposed instruction No. 5, which would have told the jury that:

> Your are instructed that whether a person proceeding in the dark is contributory negligence [*sic*] depends on the circumstances of the case and that the controlling factors are the degree of darkness and the justification or need for proceeding in a particular fashion. Darkness requires a person to exercise greater caution for his own safety than is ordinarily required.

Instruction No. 15, given by the trial court, stated, in part:

> Such invitee must look out for his own safety and in doing so is required to use that degree of care which a reasonably careful person, of ordinary intelligence, would exercise *under like or similar circumstances*. (Italics ours.)

■ The court's instruction correctly stated the applicable law. The conditions of darkness, and the need for proceeding in a particular fashion are merely elements for the jury to consider in determining the reasonableness of respondent's conduct at the time in question.

■ In *Hartman v. Port of Seattle*, 63 Wn.2d 879, 389 P.2d 669 (1964), this court said, at 888:

> In *Smith v. McDaniel*, 53 Wn. (2d) 604, 335 P. (2d) 582 (1959), we said:
>
> "The test should be: May counsel, from the instructions given, satisfactorily argue his theory of negligence to the jury? . . ."
>
> *Cf. DeKoning v. Williams*, 47 Wn. (2d) 139, 286 P. (2d) 694 (1955); Wiehl, Instructing a Jury in Washington, 36 Wash. L. Rev. 378 (1961).
>
> .　.　.　.

The theories of each of the parties were presented to the trier of the facts. The defendent was not denied the opportunity to argue satisfactorily its theory of negligence to the jury under the instructions given.

The court's instructions were sufficient in this regard, and this assignment of error is therefore, without merit.

Appellant next assigns error to the failure of the trial court to give its proposed instruction No. 7, reading:

> One having a choice of proceeding by two different ways is contributorily negligent in pursuing a course which is dangerous rather than one which is safe where an ordinarily prudent person would not have so chosen.

Reasons similar to those above stated with regard to appellant Great Western's proposed instruction No. 5, are applicable to this claimed error. The trial court's instructions, particularly instruction No. 5, which were given to the jury amply covered the matter of contributory negligence on the part of respondent.

■ Moreover, appellant Great Western's proposed instruction No. 7 might very well be misleading to a jury, in implying that one, *with or without knowledge of the danger,* who chooses the more dangerous path, is guilty of contributory negligence as a matter of law. This is most emphatically not the law. A trial court need never give a requested instruction that is erroneous in any respect. *Vogel v. Alaska S.S. Co.,* 69 Wn.2d 497, 419 P.2d 141 (1966).

Appellant Great Western's final assignment of error is based on the trial court's failure to give its proposed instruction No. 8, which stated that:

> Where the claimed negligence of the operator of a business is based upon his failure to keep his premises in a reasonably safe condition for a business invitee, in order to prove such negligence it must be shown (1) that the operator had superior knowledge concerning the dangerous condition of the premises to the invitee; and (2) that the condition had either been brought to his attention, or has existed for such time as would have afforded him sufficient opportunity, in the exercise of reasonable care, to have been cognizant of and to have removed the danger.

The court's instruction on this point (No. 15) included the following:

The owner or occupant of property is not a guarantor of the safety of the premises to his invitee but owes to such invitee the duty to exercise reasonable and ordinary care to keep the property reasonably safe for use by such invitee, or the duty to give to the invitee notice of a *dangerous condition known, or which should have been known, to such owner, and unknown to such invitee.* (Italics ours.)

Here, again, we find the trial court's instruction proper and adequate on this point. *Hartman v. Port of Seattle, supra.*

Appellant's argument that the court's instruction does not cover the situation where the condition causing injury was known to the injured person is clearly erroneous. But in any event, the record is barren of evidence showing that respondent knew of the dangerous condition, as opposed merely to the existence and location of this sump. On the other hand, appellant Great Western had apparently undertaken the responsibility of seeing that the sump had an adequate and secure cover. It was at its request that the alteration of the sump was made, though the method of lowering the pipe was the choice of the county. Under such circumstances, Great Western knew or should have known of the insecure positioning of the sump cover. Accordingly, we find this assignment of error without merit.

The judgment of the trial court is affirmed on both appeals.

FINLEY, C. J., HUNTER, J., and LANGENBACH, J. Pro Tem., concur.