[No. 38119. Department One. October 6, 1966.]

ARNOLD J. MCLEAN SMITH *et al., Respondents,* v. JOHN DOE RODENE *et al., Appellants.**

*Hullin, Erlichman, Carroll & Roberts* and *Comfort, Dolack & Hansler,* for appellants Rodene.

*Jack E. Hepfer* and *Bruce Maines,* for appellants Grimes et al.

*Leonard W. Schroeter* and *Schroeter, Farris, Bangs & Horowitz,* for respondents.

BARNETT, J.†—As a result of two separate and distinct

*Reported in 418 P.2d 741.

---

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

automobile collisions, plaintiffs, Arnold and Yvonne Smith, brought consolidated actions against (1) defendant Helen Rodene and (2) all of the remaining defendants, to whom we shall hereinafter refer, collectively, as "Grimes." The causes were tried to a jury, which returned a verdict on the first cause in favor of both plaintiffs against defendant Rodene in the amount of $17,603; and on the second cause in favor of plaintiff Yvonne Smith against defendants Grimes in the amount of $20,395. Appeal is taken by all defendants.

The first collision occurred on September 13, 1962. With Mr. Smith driving and his wife riding as a passenger, their automobile was stopped behind a preceding vehicle which was waiting to make a left turn off from Highway 99. The Smiths were struck from behind by an automobile driven by defendant Helen Rodene. As a direct result of this impact, the Smith vehicle was damaged in the amount of $338.07. Mrs. Smith received injuries to various parts of her body, for which she received immediate hospital treatment. She experienced headaches, pain in her neck, back and shoulders, and cramping of the hands and feet. Also, her knees and arms were bruised, and she experienced vomiting. During the months following this collision, Mrs. Smith underwent substantial treatment. By the time of the second collision, most of her injuries had subsided, but she continued to suffer from occasional headaches and pain in her neck and upper extremities.

Plaintiff Arnold Smith, as a result of the September, 1962, collision, suffered a bruised ankle and, for a short time, headaches. At no time did Mr. Smith seek medical treatment for these ailments. In November of 1962, 2 months later, and after experiencing difficulty in seeing out of his right eye, he consulted an eye specialist in quest of treatment. Thereafter, Smith received treatment for his eye ailment from several doctors, and, as a result of this attention, his visual problems had largely disappeared by April of 1963.

The second collision occurred on May 7, 1963. Again, Mr. and Mrs. Smith were riding in their compact English

Triumph automobile, which was stopped at a traffic light in the city of Seattle. Immediately behind the Smith vehicle was a Ford produce truck, owned by Grimes Produce Company and operated at the time by an employee, Alfred Bergeron. The truck was driven, or rolled, slowly forward, a result of which was a slight impact with the Smith vehicle. Following this impact, Mrs. Smith again required extensive medical treatment, which was directed principally to relieve her discomfort from pain in her neck and upper extremities. Mr. Smith complained of no injury as a result of this second collision.

A complaint was filed by the Smiths in March, 1963, against defendant Rodene. In November, 1963, following the second accident, the original complaint was amended to include the Grimes defendants.

The case went to the jury solely on the damage issue, liability by all parties, by that time, having been admitted.

Error is first assigned to the giving of instruction No. 10, which, contend defendants, erroneously places upon them the burden of allocating the damages attributable to the respective collisions. Instruction No. 10 states in part:

> In determining your verdict you will first determine the total amount of special damages suffered by the plaintiffs and the total amount of general damages. You will then determine how much of each of these total amounts the respective defendants are responsible for.
> *The defendants have the burden of proof of establishing by a preponderance of the evidence how the allocation, if any, is to be made between the defendants.* (Italics ours.)

We find this to be an improper statement of the law as it obtains in this jurisdiction. It must be borne in mind that we have here two independent torts and two separate harms. The collisions were widely separated by both time and distance. Absent are the factors which give rise to joint tort liability. There was neither concert of action nor independent torts uniting to cause a single injury. *Young v. Dille*, 127 Wash. 398, 220 Pac. 782 (1923). Nor is this a multiple-collision case in which "joint" liability is often imposed. See *Maddux v. Donaldson*, 362 Mich. 425, 108

N.W.2d 33 (1961), and an extensive annotation in 100 A.L.R.2d 16.

■ The instant case was tried upon the theory that there were two separate torts. Plaintiffs, in their complaint, alleged that, as a result of the second collision, the injuries which Mrs. Smith had sustained in the first became "exacerbated and aggravated." The liability of each defendant being several, and not joint, the burden is on the plaintiff, as in any other case, to prove the amount of damages attributable to each collision. We cite *Maas v. Perkins*, 42 Wn.2d 38, 43, 253 P.2d 427 (1953), as bearing upon the necessity of the plaintiff establishing liability of each of the several defendants. The plaintiff was the owner of certain real property upon which had accumulated a quantity of oil, sludge and waste. She brought suit against several neighboring landowners, joining them as party defendants, in which she sought an injunction and damages resulting from the undesirable deposits. At trial, plaintiff established the fact of defendants' liability, but produced no evidence to the effect that any particular defendant was responsible for a specific amount of her total damages. The trial court thereupon dismissed the case. Affirming, we said:

> In her complaint, appellant alleged that she was in doubt as to the person or persons from whom she was entitled to redress, and for that reason she was joining all of the named defendants. Such procedure is appropriate . . . .
> *This, however, does not relieve a plaintiff from the burden of proving that a particular defendant, whose liability is several rather than joint, caused damage to plaintiff in a specified amount.* The difficulty of making such a showing is readily recognized. Unless it is done, however, the trial court has no basis in the evidence for allocating total damage between a number of severally-liable . . . tortfeasors . . . . (Italics ours.)

Insofar as instruction No. 10 places upon defendants the burden of apportioning the damages between them, it is erroneous. That the trial court recognized the correct principle of law is apparent from its giving of instructions No. 4 and No. 7. Instruction No. 4 states in part:

*The burden of proof is on the plaintiffs* to establish by a fair preponderance of the evidence the *nature* and *extent* of the damages sustained as a result of the *respective accidents.* (Italics ours.)

Instruction No. 7 states:

You are instructed that, since there were two separate accidents in which the plaintiff, Mrs. Yvonne Smith was involved, that the *burden of proof rests upon Mrs. Smith* to prove by a fair preponderance of evidence insofar as reasonably possible *which of her injuries are probably attributable to the first accident, and which of her injuries are probably attributable to the second accident.* (Italics ours.)

Instruction No. 10, which we have held erroneous, is patently inconsistent with and contradictory to instructions No. 4 and No. 7 which we now hold to be correct. Their incompatibility is irreconcilable, thus requiring reversal. This court, in a long line of decisions, has consistently held that it is prejudicial error to give irreconcilable instructions upon a material issue in the case. In *Matteson v. Thiel,* 162 Wash. 193, 197, 298 Pac. 333 (1931), we quoted from *Babcock v. M. & M. Constr. Co.,* 127 Wash. 303, 220 Pac. 803 (1923):

"We have often held that, where instructions inconsistent and contradictory are given involving a material point in the case, their submission to the jury is prejudicial, for the reason that it is impossible to know what effect they may have upon the verdict. [Citing cases.]"

*Hart v. Clapp,* 185 Wash. 362, 54 P.2d 1012 (1936), was a case in which contributory negligence was raised as an affirmative defense. The trial court gave a correct general instruction that *defendant* had the burden of proving all affirmative defenses. It also instructed, however, that *plaintiff* had the burden of proving herself free from contributory negligence. We reversed a judgment in favor of the defendant for the reason that, the instructions, when read as a whole, were irreconcilable, in that they "set up for the guidance of the jury contradictory rules pertinent to a material and vital issue in the case."

Other decisions announcing essentially the same rule of

law are *Tuschoff v. Westover,* 65 Wn.2d 69, 395 P.2d 630 (1964); *Warran v. Hynes,* 4 Wn.2d 128, 102 P.2d 691 (1940); and *Clark v. Federal Motor Truck Sales Co.,* 175 Wash. 438, 27 P.2d 726 (1933).

Defendant Rodene makes a further assignment of error concerning the eye ailment suffered by Mr. Smith following the first accident, and the reception of evidence related thereto. It is defendant Rodene's contention that the eye condition suffered by Mr. Smith (to whom the jury granted a recovery of $1,396) was caused solely by his anxiety for his wife's condition, and the condition of his family during the period of her convalescence, and not by any injury directly attributable to the automobile collision. From this fact, defendant Rodene urges as applicable the rule of law that no recovery can be realized for injuries resulting from sympathy or anxiety for another's suffering. Therefore, defendant argues, all evidence relating to the damages incurred as a result of this eye ailment should not have been allowed consideration by the jury in their assessment of damages.

Mr. Smith's medical expert at trial was one Dr. Topinka, an ophthalmologist. A hypothetical question was posed to him based upon evidence adduced to that point, by which he was asked whether he was "able to form an opinion with reasonable medical probability as to whether or not the eye condition that . . . [he] observed and treated was causally related to the auto collision of September 13, 1962 and the events flowing from it?" The witness answered: "By probabilities, yes. This would be the triggering mechanism whereby he would have his difficulties."

Mr. Smith testified that he was nervous and tense over his wife's condition following the first accident; that he felt this anxiety physically; that he could not sleep properly; that he drank too much coffee and smoked excessively. Dr. Topinka, on direct examination, was questioned by Mr. Schroeter, plaintiffs' counsel, concerning the eye ailment:

Q. . . . What is the medical term you give to this [Mr. Smith's] condition? A. . . . [T]his is a spasm,

in lay terms, of the blood vessel . . . . Q. What is the reason why this happens, as you understand it, medically? A. Generally the accepted cause of this in most medical literature is that you have nervous tension creating a spasm of a blood vessel. Q. Is this, then, a stress illness? A. It is triggered by stress, yes. Q. Is it somewhat similar to more familiar things like ulcers which are also stress related? A. Yes.

On cross-examination the doctor was asked:

Q. Very briefly so that the record is clear, Doctor, your testimony concerning the diagnosis and treatment of Mr. Smith's eye is predicated on a history which includes *no direct trauma or injury to his eye in this auto accident?* A. That is right. Q. And your opinion as stated here is based upon a history given you by the patient which primarily includes *anxiety for his wife's condition and his own general family condition as it was disrupted by reason of his wife's condition?* A. Yes. Q. Is that a fair statement of the fact foundation for your testimony? A. Yes. (Italics ours.)

It is clear from this testimony that Mr. Smith's eye ailment was not caused by the impact which he himself received in the first collision, but rather arose out of his apprehension and anxiety for his wife's unfortunate condition, and the general deterioration of the well-being of his family.

█ We have consistently held that, as a general rule, recovery may not be had for mental anguish or distress of mind in those cases not involving malice or wrongful intent unless there has been an actual invasion of the plaintiff's person or security or a direct possibility thereof. See *Murphy v. Tacoma,* 60 Wn.2d 603, 374 P.2d 976 (1962), and cases cited therein. Our decisions in the area of recovery for mental stress with resulting physical impairment is nicely summarized in *United States v. Hambleton,* 185 F.2d 564, 565 (9th Cir. 1950):

We think that a fair summary of the holdings in such cases is as follows: (1) Where plaintiff suffers mental or emotional distress which is caused by some *negligent* act of the defendant, there is no right of action, even although the mental condition in turn causes some physi-

cal injury, *Stiles v. Pantages Theatre Co.*, 152 Wash. 626, 279 P. 112, 114; *Corcoran v. Postal Telegraph-Cable Co.*, 80 Wash. 570, 142 P. 29, 30 . . . *Barnes v. Bickle*, 111 Wash. 133, 189 P. 998, 999; *Kneass v. Cremation Society of Washington*, 103 Wash. 521, 175 P. 172, 173, 10 A.L.R. 442; unless the act causing the mental fright or emotional distress also threatens an immediate physical invasion of plaintiff's personal security, that is, threatens immediate bodily harm. *O'Meara v. Russell*, 90 Wash. 557, 156 P. 550 . . . *Frazee v. Western Dairy Products*, 182 Wash. 578, 47 P.2d 1037. (2) But where mental suffering or emotional distress is caused by a *wilful* act, recovery is permitted.

Mr. Smith, in the instant case, received a physical impact in the same collision which injured his wife. It is clear from the testimony, however, that there was no direct causal connection between this impact and the eye ailment he later suffered, which was caused principally by his anxiety and concern for his spouse's condition. Similar facts were involved in *Taylor v. Spokane, Portland & Seattle Ry.*, 72 Wash. 378, 130 Pac. 506 (1913). There, also, the mental distress suffered by the plaintiff was not a direct result of the impact to her person. She was injured when two trains collided, one of which carried her as a passenger. There was evidence that a contributing cause to her subsequent physical impairment was the shock which she experienced upon viewing her fellow passengers covered with blood. We held that it was error to admit this evidence, saying at 380,

> The fact that the plaintiff saw persons covered with blood upon the street car, and that the sight of mangled persons might cause a shock which would contribute to the plaintiff's condition, was wholly immaterial and improper, because "mental distress caused by sympathy for another's suffering is not a recoverable element of damages." 8 Am. & Eng. Ency. Law (2d ed.), 64.

A California case nearly in point is *Clough v. Steen*, 3 Cal. App. 2d 392, 39 P.2d 889 (1934). This case involved an automobile collision in which the plaintiff mother was injured and her minor son killed. She claimed damages for physical injury resulting from shock occasioned by the

knowledge of her boy's death. Reversing a verdict for the plaintiff, the court said:

> The trial court erroneously included in the judgment an amount which represented damages for the grief and shock and consequent damage suffered by plaintiff when she learned of the death of her child. For this injury she may not recover damages from defendant, although she is entitled to recover for her own mental and physical injuries proximately caused by the accident.

In *Spade v. Lynn & Boston Ry.*, 172 Mass. 488, 52 N.E. 747 (1899), the plaintiff sought recovery of damages for physical injuries resulting from fright caused when the defendant ejected a drunken man from a carriage in which she was a passenger. The evidence showed that plaintiff was jostled during the struggle, and, from this, "impact" was claimed. It was held that she could recover only for injuries resulting from the fright caused by contact with plaintiff's person, and not for that arising from the entire incident. The court said that the only wrong done to plaintiff was the contact, and her recovery must be limited to its consequences. *Hack v. Dady*, 142 App. Div. 510, 127 N.Y. Supp. 22, 25 (1911), also concerned mental distress. We adopt the language from that decision:

> [A] recovery may not be had in an action for negligence for consequences attributable to fright alone, or to shock alone, merely upon proof that there was a bodily injury coincident with that fright or that shock, but it must appear that there was some causal relation between the bodily injury and the fright or shock.

In the case at bar there is no causal relation between the impact received by Mr. Smith and the mental stress he later experienced. The trial court erred when it allowed the jury to consider evidence of the eye ailment in assessing the damages.

Error is also assigned to the trial court's refusal to allow defendants Grimeses' medical witness to answer a certain hypothetical question posed to him. The witness was one Dr. Klemperer, who had examined Mrs. Smith for purposes of the litigation. No purpose would be served in setting out

the lengthy hypothetical question at issue, which we have considered and found to be a fair statement of facts upon evidence adduced to that point. Defendants Grimeses' offer of proof was that, based upon the hypothetical, the witness would have expressed his opinion that 85 per cent of Mrs. Smith's injuries were attributable to the first accident, and 15 per cent to the second. We have held that a qualified expert is competent to express an opinion on a proper subject even though he thereby expresses an opinion on an ultimate fact to be found by the trier of fact. *Batten v. South Seattle Water Co.*, 65 Wn.2d 547, 398 P.2d 719 (1965); *Gerberg v. Crosby*, 52 Wn.2d 792, 329 P.2d 184 (1958). Defendants, however, cite no authority upon the pertinent issue before us; *i.e.*, whether a medical expert is competent to express his opinion, that, under circumstances such as these, a certain percentage of total physical harm can be attributed to one cause, and a certain percentage to another. We think the question intriguing, but are unwilling to research the point. We therefore decline to consider the assignment. *McBroom v. Orner*, 64 Wn.2d 887, 395 P.2d 95 (1964); *Frey v. Kent City Nursing Home, Inc.*, 62 Wn.2d 953, 385 P.2d 323 (1963).

We have considered the remaining assignments of error and have concluded that they do not merit discussion, since the case is to be retried upon proper instructions regarding the burden of proof.

The judgment is reversed and the cause remanded for proceedings not inconsistent with this opinion.

ROSELLINI, C. J., HILL, OTT, and HUNTER, JJ., concur.

February 6, 1967. Petition for rehearing denied.