[No. 39540. Department One. March 13, 1969.]

THOMAS W. SCOTT *et al., Appellants,* v. RAINBOW AMBULANCE SERVICE, INC., *et al., Respondents.**

*Reported in 452 P.2d 220.

*Vance, Davies, Roberts & Bettis,* by *William A. Roberts,* for appellants.

*Samuel C. Rutherford* and *Russell A. Austin, Jr.* (of *Rutherford, Kargianis & Austin*), for respondents.

McGOVERN, J.—Plaintiffs Scott appeal from an order dismissing their action following the opening statement of their counsel. The significant facts, as pointed out in that opening statement, are as follows:

December 19, 1964, while walking on a slippery, snow-covered street in the city of Seattle, plaintiff Patricia Scott slipped, fell, and injured her left arm. The extent of the injury was such that she lay on the street until necessary help arrived. She was then assisted into a nearby apartment house. The defendant ambulance company was called and their vehicle arrived 45 minutes later. Mrs. Scott's arm was still bothering her and a protective splint was placed over it. The two ambulance attendants placed her on a stretcher, tightened a single strap across her chest, elevated the stretcher to approximately 3 feet in height and proceeded to wheel her to the ambulance. Enroute along a stairway by a rockery, the stretcher tipped, Mrs. Scott fell, landed on her left side and arm, and sustained additional injuries.

Plaintiffs' counsel advised the court that prior to the day in question Mrs. Scott's left arm was normal and healthy, but that as a result of the injuries received that day, the arm became permanently impaired. He also stated:

Now, the evidence will show that Mrs. Scott did in fact sustain an additional injury to her left arm as a result of falling onto the stairway and rockery, but *there is absolutely and there will be no testimony that anyone can determine the extent of the injuries which Mrs. Scott sustained as a result of her second fall.* Doctor Mosiman, who will testify here and who will be the only doctor called by Mrs. Scott, will testify that *it is absolutely medically impossible for anyone to know to what extent Mrs. Scott was injured in her first fall in the street and to what extent she was injured in her second fall* from the stretcher onto her left side in the stairway and rock-

ery, that the only thing that anyone could determine would be the extent of the injuries which she had when she reached the hospital after both falls had taken place. No one at any time examined Mrs. Scott's arm after the initial fall and prior to the time that she fell the second time onto the rockery and stairway. (Italics ours.)

Immediately thereafter, on motion, the trial court dismissed the action. The order was premised on plaintiffs' admission that they were unable to determine with any degree of certainty what injuries were sustained as a result of, or attributable to, the fall from the stretcher. It was the belief of the trial court that the total failure to make a damage segregation was legally fatal. We agree.

■ The authority of the trial court to summarily dismiss an action on the opening statement is recognized in our state. *See Bartel v. Brockerman,* 49 Wn.2d 679, 306 P.2d 237 (1957); and *Impero v. Whatcom Cy.,* 71 Wn.2d 438, 430 P.2d 173 (1967). While the purposes of the procedure may serve to prevent the unnecessary expenditure of time and money to both litigants and court, nonetheless the trial judge, as a matter of justice, must be slow to grant such a motion. We said in *Bartel, supra,* at 681:

> The . . . procedure is a summary and a final one, and the power of the trial court in this connection should be exercised sparingly, with great caution, and never without a fair opportunity for plaintiff's counsel to explain and qualify his opening statement.

If counsel for plaintiff makes an inadvertent mistake, he should be granted an opportunity to correct it.

Occasionally, however, the opening statement deliberately and understandingly invites the court's ruling at that stage of the proceeding. The statement is framed so as to eliminate all factual differences of consequence, leave an isolated and determinative question of law, and thus make possible the expeditious conclusion of the matter. That was done here.

Counsel for the parties have referred us to cases dealing with principles of law applicable to multiple tort-feasors committing independent acts of negligence with separable

damage (*Young v. Dille,* 127 Wash. 398, 229 Pac. 782 (1923)), and with legal principles dealing with joint tort-feasors or persons acting independently of each other, but responsible for concurring or successive acts of negligence combining to create the direct and proximate cause of a single injury to a third person (*Summers v. Tice,* 33 Cal. 2d 80, 199 P.2d 1, 5 A.L.R.2d 91 (1948)). We have also been referred to *Madigan v. Teague,* 55 Wn.2d 498, 348 P.2d 403 (1960), tried on the theory of a single injury caused by different defendants as a result of separate accidents.

The facts in each of those cases differ from those at hand. We are concerned with a single injury, one claimed tort-feasor and a plaintiff who apparently contributed to the single injury through her own fault. This material fault of the plaintiff, contributing substantially to the single injury, removes this case from that field of lawsuits where the legal principles applied were appropriate to the situation of an innocent plaintiff faced with multiple wrongdoers. There is a tendency in the latter cases to relax the usual rule that the burden of proof as to causation is upon the plaintiff. The reason is apparent: should the loss due to failure of proof of causation fall upon the innocent or the culpable? It is reasoned that it is unfair to deny an innocent person redress simply because he cannot prove how much of the damage each tort-feasor caused, when it is certain that between them they caused it all. *Also see* the footnote comment of Rosellini, J. in *Madigan v. Teague, supra,* at 502.

In holding here that the burden of proof as to segregation of damages rests with the plaintiff, we find *Smith v. Rodene,* 69 Wn.2d 482, 418 P.2d 741 (1966), applicable. In *Smith* the plaintiffs joined as defendants the operators of automobiles with whom they had been involved in separate accidents at periods of time 8 months apart. Two separate torts were thus involved and the plaintiffs claimed the injuries received in the first accident were aggravated as a result of the second accident. We held that the liability of each defendant was several, not joint, and that the burden of proof was on the plaintiffs to assign to each defendant

the portion of damages attributable to that particular defendant's negligence. We still adhere to that familiar principle of law. When the facts of the case are such that plaintiff is clearly one of the two persons responsible for the injury involved, and plaintiff makes no attempt to segregate those damages, we find no over-riding reason in justice for shifting that burden of proof to the defendants.

It should be pointed out, however, that although we required the plaintiffs in *Smith v. Rodene, supra,* to segregate damages from a burden of proof standpoint, nonetheless we did not require an absolute segregation. The instruction that we approved only required that plaintiffs show by a fair preponderance of the evidence, *insofar as reasonably possible,* which of plaintiffs' injuries were *probably attributable* to the first accident and which were *probably attributable* to the second accident.

Here, according to plaintiffs' clear and express statement, the issue of damages would necessarily be left to speculation, conjecture and surmise. No attempt to segregate would be attempted. Since it was plaintiffs' responsibility to remove the issue from the realm of guesswork, the order of dismissal was appropriately entered. *Hufford v. Cicovich,* 47 Wn.2d 905, 290 P.2d 709 (1955).

Defendants DeBella did not participate in the trial below or in the appeal. For that reason we have not referred to them.

Affirmed.

WEAVER, ROSELLINI, and HALE, JJ., and OTT, J. Pro Tem., concur.