[No. 2829-1. Division One. May 3, 1976.]

RAY P. FREEMAN, ET AL, *Respondents*, v. INTALCO ALUMINUM CORPORATION, *Appellant*.

*Lane, Powell, Moss & Miller, G. Keith Grim, Richard F. Allen, Robert R. Davis, Jr., Abbott, Lant & Fleeson, Richard Fleeson, Detels, Draper & Marinkovich,* and *J. Richard Crockett,* for appellant.

*Ferguson & Burdell, William Wesselhoeft, Christopher Kane, Pemberton & Bentley, Joseph T. Pemberton (Tooze, Kerr, Peterson, Marshall & Shenker, Arden Shenker,* and *William G. Sheridan, Jr.,* of counsel), for respondents.

Swanson, J.—Ray P. Freeman and Helen A. Freeman sued Intalco Aluminum Corporation claiming that pollutants from Intalco's factory caused damage to their farm and to themselves. Liability was admitted, leaving the amount of damages as the sole issue to be decided by the jury. The court instructed the jury as to the measure of damages, in pertinent part, as follows:

> In this case the plaintiffs make separate claims for damage for, first, their physical pain, suffering, disability and injury in the sum of $150,000.00, and your verdict

may not exceed that amount in the aggregate for both parties; second, their annoyance, anguish and irritation, together with their mental suffering from the loss of enjoyment of their property in the sum of $265,000.00, and your verdict may not exceed that amount in the aggregate for both parties; third, their loss of the use and the economic benefit of their property in the sum of $160,000.00, and your verdict may not exceed that amount; fourth, damage to their trees and shrubs in the sum of $15,000.00, and your verdict may not exceed that amount. Each of these claims is to be considered by you separately.

. . .

In ascertaining damages, you should consider the following: . . . As to the second claim, you should consider all evidence bearing on the annoyance, anguish and irritation and mental suffering from the loss of enjoyment of the plaintiffs' property. . . .

As to the third claim, you should consider the following elements:

1. Any loss or damage to crops raised on the property measured by the value of the crops lost or depreciation in the value thereof.

2. Any deterioration and loss of productivity of the property for agricultural purposes resulting from the consequences of pollution to or on plaintiffs' property.

3. The loss to and deterioration in, if any, the plaintiffs' personal and residential use of their property.

Instruction No. 15.[1] The jury returned a verdict awarding no damages for physical pain, suffering, disability, and injury, but awarded $60,000 to each of the Freemans for irritation, annoyance, and anguish, together with mental suffering from the loss of enjoyment of their property. The jury denied any award for alleged damage to trees and shrubs but fixed damages for the loss of use of their property at $10,500.

Intalco appeals and assigns error to the denial of its motion for new trial on five separate grounds, contending (1) the Freemans' counsel was guilty of flagrant misconduct which operated to impassion and prejudice the jury; (2) there was no evidence, or reasonable inference there-

---

[1]Intalco does not assign error to the instructions to the jury.

from, to justify a $120,000 verdict for "irritation, anguish and annoyance"; (3) the damages awarded are so excessive as to unmistakably indicate that the verdict was the result of passion and prejudice; (4) there was no evidence, or reasonable inference therefrom, to justify the $10,500 verdict for loss of use; and (5) in the absence of physical personal injury or sufficient evidence to sustain any claim for "loss of use," the $120,000 verdict for intangible injuries is invalid as a matter of law.

We observe at the outset that the primary question presented by a motion for new trial is whether the losing party received a fair trial. *State v. Taylor*, 60 Wn.2d 32, 371 P.2d 617 (1962). In commenting on the deference to be given the trial judge, the court in *Baxter v. Greyhound Corp.*, 65 Wn.2d 421, 397 P.2d 857 (1964), stated at page 440,

> And, it is in this area of the new-trial field that the favored position of the trial judge and his sound discretion should be accorded the greatest deference, particularly when it involves the assessment of occurrences during the trial which cannot be made a part of the record, other than through the voice of the trial judge in stating reasons for the action taken.

Only when discretion is abused may an order granting or denying a new trial be reversed, *Olpinski v. Clement*, 73 Wn.2d 944, 442 P.2d 260 (1968), except when the grounds given by the trial court are based upon questions of law, *Detrick v. Garretson Packing Co.*, 73 Wn.2d 804, 812, 440 P.2d 834 (1968).

We turn to consideration of Intalco's first claim of error —misconduct of plaintiffs' counsel. Intalco relies upon four specific incidents to support its claim of flagrant misconduct requiring a new trial, pursuant to CR 59(a)(2). These incidents may be summarized as follows: (1) improper reference to a party's duty to produce evidence and witnesses; (2) references to the exclusion of photographic evidence; (3) reference to evidence of plaintiffs' running eyes and sore throats as evidence of irritation, anguish, and annoyance, when such evidence had been excluded with regard

to personal injury; and (4) reference to the unavailability of representatives from the corporate defendant at trial. The trial judge, in his oral opinion denying Intalco's motion for new trial, recognized the impropriety of portions of the argument advanced by Freemans' counsel, but after careful consideration of the question concluded that the curative instructions were sufficient to remove any prejudicial effect such remarks may have had upon the jury. The court then made these observations, which we do find persuasive:

> The question is, is it of sufficient importance to deserve drastic action by new trial or something of that kind, and I thought about this as carefully as I could at the time, I observed the jury as carefully as I could during the course of the argument, and I might say that I am not putting undue weight on the technical fact that as to one phase of it Mr. Allen didn't offer a curative instruction. I think that's pretty petty. If I really thought that this jury was misled by counsel's argument, I'd grant a new trial regardless of how specific or how many times the objection was repeated.
>
> *But I do think the two curative instructions that were given were adequate to the purpose, and that's why I gave them at the time.*

(Italics ours.) Our review of the record of each of the incidents referred to leads us to the same conclusion. We find no abuse of discretion.

Intalco's second claim of error—lack of evidence to support the verdict for "irritation, anguish, and annoyances"—can be treated summarily. We stated in *Dravo Corp. v. L.W. Moses Co.*, 6 Wn. App. 74, 80-81, 492 P.2d 1058 (1971), *review denied*, 80 Wn.2d 1010 (1972),

> [W]e cannot set aside the verdict unless we can say as a matter of law there is neither evidence nor reasonable inference from the evidence to support the verdict. After viewing the evidence in a light most favorable to the party against whom the motion is made, all competent evidence favorable to the party who obtained the verdict must be taken as true and that party must be given the benefit of every favorable inference which reasonably may be drawn from the evidence. If there is substantial evidence to support the verdict, it must stand. Substan-

tial evidence is that character of evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed.

Both Mr. and Mrs. Freeman testified extensively about the irritation, annoyance, and anguish they suffered from the invasion of their property by fluoride emanating from Intalco's factory. As to the certainty of the proof required, the court in *Riblet v. Spokane-Portland Cement Co.*, 45 Wn.2d 346, 274 P.2d 574 (1954), a pollution nuisance case, discussed the question of the sufficiency of evidence to prove damages, and stated at page 355,

> Admittedly, no one testified to damages in consequence of personal discomfort and annoyance in terms of dollars and cents, but the fact that no one has placed a monetary value on personal discomfort and annoyance does not make the damage speculative or conjectural. It is recognized that the determination of the extent of the discomfort and annoyance to plaintiffs, and the amounts which will reasonably compensate them for such injuries, rests largely in the discretion of the jury.

Failure of the jury to award damages for the claimed personal injuries or damage to the trees and shrubs, though arguably incongruous, furnishes no basis for impeaching the award for anguish, irritation, and annoyance. In considering this argument, the trial court stated,

> I think that the verdict reflects a careful weighing of the various elements, and while I don't say that I would have given the same amount, I think the same order of priorities are exactly the same priorities the Court would have applied. By far the largest award the Court would have made would have been on the one that they did for annoyance, what have you. I think there would have been a smaller award for loss of use. If there was an award for trees it would have been substantially smaller yet, and I don't think the Court would have given anything for personal injuries, and the jury didn't.
> All of which leads me to believe that the verdict is one that a jury is entitled to bring in and that I think is the function of the Court on hearing these motions, is it within permissible limits or is it not, and I'm satisfied that while it's a substantial verdict indeed, it is within permissible limits.

The record discloses substantial evidence to support the jury's award for irritation, anguish, and annoyance, and we can find no proper basis for upsetting the verdict on the grounds of its excessiveness, as Intalco argues we should.

■ In reviewing the claim of excessive damages, indicating passion and prejudice on the part of the jury, we are guided by the test described in *Kramer v. Portland-Seattle Auto Freight, Inc.*, 43 Wn.2d 386, 395-96, 261 P.2d 692 (1953):

On the one hand, the following must be considered: Each cause depends, to a large extent, upon its own facts and circumstances. The verdict must be compensatory of a pecuniary loss. *Walters v. Spokane International R. Co.*, 58 Wash. 293, 108 Pac. 593 (1910). It can be substantial (*Atkeson v. Jackson Estate*, 72 Wash. 233, 130 Pac. 102 (1913); *St. Germain v. Potlatch Lbr. Co.*, 76 Wash. 102, 135 Pac. 804 (1913); *Skeels v. Davidson*, 18 Wn. (2d) 358, 139 P. (2d) 301, 149 A. L. R. 225 (1943)) but not out of proportion to actual damages. *Halverson v. Seattle Electric Co.*, 35 Wash. 600, 77 Pac. 1058 (1904). The amount of the damage is within the discretion of the jury, under proper instructions. The jury is given considerable latitude in making such determination as to it seems just. *Aronson v. Everett*, 136 Wash. 312, 239 Pac. 1011 (1925); *Ticknor v. Seattle-Renton Stage Line*, 139 Wash. 354, 247 Pac. 1 (1926). The subject matter being difficult of proof, it cannot be fixed with mathematical certainty by the proof. Once the determination is made, an appellate court will give great weight to, and is reluctant to interfere with, the jury's verdict. *Kellerher v. Porter*, 29 Wn. (2d) 650, 189 P. (2d) 223 (1948).

On the other hand, the balancing factor is the conscience of the appellate court, when there is an affirmative showing that passion and prejudice played no part in the jury's determination. Is the amount flagrantly outrageous and extravagant? Is it unjustified in the light of the evidence? Does it disclose circumstances foreign to proper jury deliberations? If it is and does, then it can be said to shock the sense of justice and sound judgment, and the verdict of the jury is excessive.

After quoting the *Kramer* rule with approval, the court in

*Hogenson v. Service Armament Co.*, 77 Wn.2d 209, 461 P.2d 311 (1969), said at page 218,

> Since there was no significant evidence indicating that passion and prejudice played any part in the jury's determination, the test to be used is the conscience of the appellate court.

Similarly, we find no evidence that passion and prejudice was involved in the jury's determination, and while the amount is large, we cannot say that it shocks our sense of justice. We decline to tamper with the jury's award.

Intalco next claims it was error to deny a new trial because the $10,500 award for loss of use is not supported by substantial evidence. We disagree. Our review discloses that substantial evidence supports the "loss of use" claim.

Finally, Intalco has argued that the $120,000 verdict for intangible injuries, *i.e.*, annoyance, anguish, and irritation, and mental suffering for the loss of enjoyment of the plaintiffs' property, cannot be justified as a matter of law because it is for emotional damages only. Intalco has relied upon the general rule expressed in *Smith v. Rodene*, 69 Wn.2d 482, 488, 418 P.2d 741 (1966):

> [R]ecovery may not be had for mental anguish or distress of mind in those cases not involving malice or wrongful intent unless there has been an actual invasion of the plaintiff's person or security or a direct possibility thereof.[2]

---

· [2]The rule of *Smith v. Rodene*, 69 Wn.2d 482, 418 P.2d 741 (1966), was reexamined by our Supreme Court in *Grimsby v. Samson*, 85 Wn.2d 52, 58, 530 P.2d 291 (1975). There a plurality states:

> As a general rule, we have denied recovery for mental anguish and distress in cases *not involving malice or wrongful intent*, unless there has been an actual invasion of a plaintiff's person or security, or a direct possibility thereof.

(Italics ours.) The plurality would then ostensibly *broaden* the basis for liability by adding a "tort of outrage," but it would adopt the standards set forth in the comments to Restatement (Second) of Torts § 46 (1966), under which a showing of malice or wrongful intent, without more, apparently would not be enough to take the plaintiff beyond the rule requiring actual or directly possible invasion of person or security:

> [I]t is not enough that a "defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict

The parties argue that our affirmance of the award for the Freemans' loss of use of their property supports the award for annoyance, anguish, and irritation, and renders moot Intalco's argument on this point. In addition we note, as the Freemans point out, the issues of wantonness and willfulness were removed from the jury's consideration on Intalco's motion based on a stipulation that its fumes did, in fact, "come upon the plaintiffs' property and presumably touch their person . . ." Intalco's counsel stated to the court at the outset of the trial,

MR. DAVIS: Your Honor, the second issue deals with the other aspect of intentional misconduct or willful, malicious, wanton conduct by the defendant.

The plaintiffs in their brief, page 15, set out that [they] are entitled to damages for irritation, anguish and annoyance under either of two theories. One is for a direct invasion or threat of invasion to plaintiffs' person, property or security, and the second is malicious or wanton, willful or intentional conduct by the defendant. Further, because Intalco will admit liability, that its fumes, its gases do, in fact, come upon the plaintiffs' property and presumably touch their person, and there is no further issue as to the second claim made, or the second issue raised by the plaintiffs. By saying that we do, in fact, trespass upon their property, no further issue needs to go to the jury except that as to the damage and what damage occurs. We will not say that we have not invaded their property, that our fumes have gone across their property without touching it, and therefore, any damage under both Washington law, the *Second Riblet Case* to which I refer, and the restatement would permit plaintiffs to recover, and we need not hear anything more about malicious, wanton or willful conduct on behalf of Intalco.

. . .

THE COURT: . . . I feel that the admission of liability is sufficiently broad to encompass responsibility for all the various items of damage that the plaintiff is seeking as a category, assuming that they are, in fact, proved

emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort."
*Grimsby v. Samson, supra* at 59.

by the evidence, and I don't really see how, in light of the admission, that an Appellate Court will find itself dealing any differently with the items of damage, if the testimony was in.

I think it is clear from what has been said here, and it certainly is clear in the Court's mind, that there is to be no element of damage that is proved and established by the evidence that is going to be outside the scope of the admission that would be in the liability if it was a willful act.

. . .

Therefore, the Court would, as thus construed, sustain the defendant's application in excluding any evidence as to wanton, willful or malicious nature of the conduct, and the plaintiffs' damages will be the same, in the Court's judgment, the same elements of damage will be appropriate as if those elements were involved, were proved.

This stipulation would foreclose consideration of Intalco's argument on this question even if our conclusion as to the "loss of use" award were contrary.

Our review of the record convinces us that the interests of both parties to this litigation were ably presented by capable and experienced counsel and carefully considered by an attentive jury, resulting in a fair, though not perfect, trial.

Judgment affirmed.

FARRIS and JAMES, JJ., concur.