5 P.3d 1265 (2000)
141 Wash.2d 431
Deborah E. COX and Gregory Cox, wife and husband, Respondents,
v.
Lynn M. SPANGLER and John Doe Spangler, wife and husband; and Ronald Spangler and Jane Doe Spangler, husband and wife, Petitioners.
No. 67907-0.
Supreme Court of Washington, En Banc.
Argued January 25, 2000.
Decided August 17, 2000.
*1266 Stewart Andrew Estes, Seattle, for Amicus Curiae on Behalf of Washington Defense Trial Lawyers.
Harbaugh & Bloom, Gary Neil Bloom, Bryan Patrick Harnetiaux, Debra Leigh Stephens, Spokane, for Amicus Curiae on Behalf of Washington State Trial Lawyers Assoc.
Gregory John Wall, Port Orchard, for Petitioners.
Troup, Christnacht, Ladenburg & McKasy, John Joseph Durkin, Tacoma, for Respondents.
ALEXANDER, J.
Deborah Cox sustained injuries when an automobile she was driving at her employer's direction was struck from behind by another automobile. Because her injuries were work related, she received industrial insurance benefits for the injuries she sustained in the accident. Approximately six months later, she again suffered injuries when she was struck from behind by an automobile as she was driving her own automobile. Cox brought suit against Lynn Spangler, the person who caused the latter accident. At trial, the trial court excluded evidence that Spangler offered regarding industrial insurance benefits that Cox received following the November 1993 accident. It also instructed the jury that the burden of apportioning damages was on Spangler if the jury found that the injuries Cox received in the two accidents were indivisible. Cox prevailed at trial and the Court of Appeals affirmed the judgment. Spangler petitioned this court for review and we granted her petition. The issues before us are whether the trial court erred in preventing Spangler from introducing evidence that Cox received industrial insurance benefits after the November accident and whether it properly instructed the jury regarding the burden of apportioning damages. We conclude that it did not err in either instance and thus affirm the Court of Appeals.

I.
On May 19, 1993, Deborah E. Cox and some of her co-workers were driving Mazda cars to a shipping facility for their employer, Auto Warehouse, Inc. While Cox was stopped at a gate, waiting for it to be unlocked, a co-employee accidentally drove the Mazda he was driving into the rear end of *1267 the Mazda that Cox was driving. Although the impact was minor, causing less than $100 in damage to the automobile Cox was driving, Cox immediately experienced a headache and felt, in her words, that her "neck was just freaked out." Verbatim Report of Proceedings at 859. Cox was examined by a doctor, who concluded that she had suffered neck and lumbar spine strain.
Over the succeeding six months, Cox reported a variety of symptoms to several treating physicians. She complained mostly of neck pain and headaches, and indicated on several occasions that she was experiencing lower back pain.
In August, September and October Cox worked a total of only 13 days for Auto Warehouse. Cox's work schedule during this period was sporadic both because she occupied a low position on her employer's seniority list, and because her symptoms worsened upon increased activity. Because Cox was injured at work, she collected industrial insurance benefits during this period as compensation for loss of employment and for the medical expense she incurred.
By November of 1993, Cox's headaches had essentially stopped and the pain she had experienced in her neck and upper back had diminished. Unfortunately, on November 2, 1993, Cox was involved in another automobile accident. She testified that the second accident occurred when she was driving her own truck and was stopped at a crosswalk to allow some pedestrians to cross the street. A following driver, Maryanne Hummel, stopped her car five or six feet behind Cox's truck. Lynn Spangler, who was driving her automobile behind Hummel, was apparently unable to stop her automobile in time and, as a consequence, rear-ended Hummel's automobile. This had the effect of shoving Hummel's car into the rear bumper of Cox's truck. Like the earlier accident, the collision was a low-speed impact and Cox's vehicle sustained only slight damage. Although Cox refused medical assistance at the scene, she did see an orthopedic surgeon, Dr. Kunkle, the following day. According to Kunkle's written report, Cox complained at that time of "considerable pain" in her previously affected neck and upper back. For the first time, she complained of a lower backache that "radiated" down her right hip and leg. Verbatim Report of Proceedings at 202.
In the months following the November 1993 accident, Cox's physical condition deteriorated. She indicated that she continued to suffer pain and was never able to return to her job with Auto Warehouse. She also accumulated considerable medical bills following this accident, some of which were paid for by the Department of Labor and Industries (Department). Cox's pain increased to the point that, in December 1994, Dr. Kunkle referred her to Dr. Stephen Settle, a physical rehabilitation specialist. Cox complained to Dr. Settle of headaches and pains in her neck, low back, right hip, right lower extremity, and right upper extremity. Subsequent magnetic resonance imaging of Cox's neck and back indicated "a small disk protrusion" in her lower back which, according to Dr. Settle, could have pinched a nerve in her spine. Verbatim Report of Proceedings at 208.
Cox eventually brought suit against Spangler for the damages she claimed she incurred as a result of the November 1993 accident. The parties thereafter stipulated that Spangler was negligent, Deborah Cox was without fault, and no unnamed party was at fault for the accident. The stipulation preserved the issues of proximate cause and damages for trial.
Before trial, Cox filed a motion in limine to preclude the parties and their attorneys from "bringing to the [jury's] attention the fact that [Cox] may have received industrial insurance benefits from the Department of Labor & Industries as a result of a May 1993 industrial accident.". Clerk's Papers at 104. The trial court granted Cox's motion, concluding that the introduction of such evidence was precluded by the so-called collateral source rule, which bars the admission of evidence of compensation the victim received from a source independent of the tort-feasor. The court concluded that the rule was applicable because Cox suffered the "same injury" in both accidents. Verbatim Report of Proceedings at 62.
*1268 At trial, the evidence established that some of Cox's injuries were not capable of apportionment between the two accidents and that her other injuries were attributable solely to the November accident. Dr. Settle testified that a lumbar sprain, like the one Cox sustained, would likely have caused Cox to experience pain or numbness during the period between the May and November accidents had the sprain been caused by the May 1993 accident. Dr. Settle therefore attributed Cox's lumbar sprain to the November accident. Dr. Settle also testified that the medical bills "relating to [treatment of Cox's] neck were a combination of the two [accidents]." Verbatim Report of Proceedings at 455. Dr. Cooper, who performed an independent medical examination of Cox for trial, testified that he made the following four diagnoses:
Cervical/dorsal strain, or neck and upper back strain, with myofascial pain in the cervical and dorsal regions, related to the motor vehicle accident of May 19, 1993, and exacerbated by the motor vehicle accident of November 2, 1993.
The second diagnosis, lumbar strain with right L5 radiculitis, due entirely to the motor vehicle accident of November 2, 1993, superimposed on minor degenerative disk disease at L5-S1.
The third diagnosis is mild depression, situational, controlled, and due to the motor vehicle accident of May 19, 1993, and the motor vehicle accident of November 2, 1993.
The fourth diagnosis, muscle tension headaches, essentially resolved.
Verbatim Report of Proceedings at 749. Dr. Cooper emphasized that Cox's condition, with the exclusion of the lumbar strain, was a "combination of the two accidents." Verbatim Report of Proceedings at 749-50. He also testified that pain that radiates below the knee typically indicates a pinched nerve in the spine. Finally, Dr. Cooper indicated that he did not attempt to segregate Cox's injuries between the two accidents beyond what he described in his testimony.
Over Spangler's objection, the trial court instructed the jury that if it found any of Cox's injuries to be "indivisible" between the May and November accidents, then Spangler bore the burden of apportioning damages for the injuries. The trial court also gave the jury the standard jury instructions on proximate cause, "lighting up" of an injury which had not previously caused pain or disability, and pre-existing bodily condition.[1] Clerk's Papers at 203-07. Neither party objected to these instructions. The jury returned a verdict in favor of Cox, for $173,880.49, which included $45,012.99 in past medical damages.
Spangler appealed to the Court of Appeals, and asserted there that the trial court erred when it excluded evidence regarding the benefits Cox received from the Department. She also claimed that the trial court erred in instructing the jury regarding apportionment of liability for damages. The Court of Appeals, Division One, affirmed the trial court. Cox v. Spangler, No. 39047-3-I, 90 Wash. *1269 App. 1028, 1998 WL 1180822 (Apr.20, 1998). Spangler thereafter petitioned this court for review, and we granted the petition.

II. Exclusion of Evidence that Cox Received Industrial Insurance Benefits
Spangler contends that the trial court improperly precluded her from introducing evidence relating to the industrial insurance benefits that Cox received after the November 1993 accident. Pet. for Review at 11. Spangler argues here, as she did at the Court of Appeals, that because the injuries for which the benefits were paid were not injuries that she caused, the collateral source rule on which the trial court relied has no application. Cox responds that "[b]ecause [Petitioner] Spangler is liable for the indivisible harm, she is prohibited from obtaining an offset of any L & I payments received by Deborah Cox as compensation for those same harms." Supplemental Br. of Resp't Cox at 6.
The parties made essentially the same arguments to the trial court. See Verbatim Report of Proceedings at 12-30. Unpersuaded by Spangler's position, the trial court granted Cox's motion in limine, concluding as follows:
[T]he collateral source rule applies when you've got the same injury here
. . . .
. . . .
I don't want any mention of Labor & Industries.... But ... you can talk about diagnoses that have been made, and you can talk about her medical history without identifying who may have worked up her medical history, or how it's paid for.... That's just not necessary.
Verbatim Report of Proceedings at 62, 64. The question before us is whether the trial court erred in making this ruling.
A trial court has "broad discretion in ruling on evidentiary matters and will not be overturned absent manifest abuse of discretion." Sintra, Inc. v. City of Seattle, 131 Wash.2d 640, 662-63, 935 P.2d 555 (1997). When it takes a view no reasonable person would take, or applies the wrong legal standard to an issue, a trial court abuses its discretion. State v. Castellanos, 132 Wash.2d 94, 97, 935 P.2d 1353 (1997); Reese v. Stroh, 128 Wash.2d 300, 310, 907 P.2d 282 (1995) (citing Fraser v. Beutel, 56 Wash.App. 725, 734, 785 P.2d 470 (1990)).
This Court has long held that "payments, the origin of which is independent of the tort-feasor, received by a plaintiff because of injuries will not be considered to reduce the damages otherwise recoverable." Ciminski v. SCI Corp., 90 Wash.2d 802, 804, 585 P.2d 1182 (1978). See also Johnson v. Weyerhaeuser Co., 134 Wash.2d 795, 798, 953 P.2d 800 (1998). Thus, courts generally exclude evidence that the plaintiff has received compensation from a third party for an injury for which the defendant has liability. Johnson, 134 Wash.2d at 798, 953 P.2d 800. The "rule is designed to prevent the wrongdoer from benefitting from third-party payments." Cox v. Lewiston Grain Growers, Inc., 86 Wash.App. 357, 375, 936 P.2d 1191 (1997). Accordingly, "as between an injured plaintiff and a defendant-wrongdoer, the plaintiff is the appropriate one to receive the windfall." Xieng v. Peoples Nat'l Bank, 120 Wash.2d 512, 523, 844 P.2d 389 (1993) (citing Ciminski, 90 Wash.2d at 804, 585 P.2d 1182).
We are satisfied that the trial court properly applied the rule in this case. We reach this conclusion because, had evidence been admitted to the effect that Cox received industrial insurance benefits after November 1993, Spangler would have improperly benefited from that evidence. That is because the jury could have reduced Cox's damages by the amount of the industrial insurance benefits that Cox had received following the November accident. In that event, Spangler would have received a windfall. Our decision is buttressed by our awareness that the Department would be entitled to claim a lien for the amount of benefits it paid to Cox against any recovery Cox obtained from Spangler. See, e.g., Flanigan v. Department of Labor & Indus., 123 Wash.2d 418, 425, 869 P.2d 14 (1994). This would have had the effect of allowing Spangler to escape paying those damages while Cox would have to reimburse the Department from whatever damages she recovered from Spangler. This is a circumstance *1270 the collateral source rule is designed to prevent.
In reaching our decision, we are not unmindful of Spangler's contention that evidence that Cox received industrial insurance benefits should have been admitted for a variety of purposes, including: to show that Cox was malingering; to impeach Cox's medical experts; and to attribute Cox's injuries to the May accident. In making this argument, Spangler ignores the point that though evidence of collateral source compensation may well be relevant for a variety of purposes, such evidence is excluded on the basis that it is unfairly prejudicial because the jury could use it for improper purposes. As we said in Johnson v. Weyerhaeuser: "[t]he very essence of the collateral source rule requires exclusion of evidence of other money received by the claimant so the fact finder will not infer the claimant is receiving a windfall and nullify the defendant's responsibility." 134 Wash.2d at 803, 953 P.2d 800. Thus, even when it is otherwise relevant, proof of such collateral payments is usually excluded, lest it be improperly used by the jury to reduce the plaintiff's damage award. Boeke v. International Paint Co., 27 Wash. App. 611, 618, 620 P.2d 103 (1980) (quoting Reinan v. Pacific Motor Trucking Co., 270 Or. 208, 213, 527 P.2d 256 (1974)). In this respect, courts generally follow a policy of strict exclusion. Although the fact that Cox received industrial insurance benefits might have some marginal relevance regarding the apportionment of Cox's damages, to show malingering, or to attack her experts' credibility, we believe such relevance is outweighed by the unfair influence this evidence would likely have had upon the jury. Johnson, 134 Wash.2d at 803, 953 P.2d 800.
We are also satisfied that exclusion of evidence of the industrial insurance benefits did not harm Spangler in any significant way. The trial court's ruling was sufficiently limited to exclude only that evidence that would have been unfairly prejudicial. As is clear from its oral ruling, the trial court only precluded evidence that the Department paid for part of Cox's treatment. Spangler was not prevented from presenting more relevant evidence about Cox's medical condition and the treatment she received both before and after the November accident. Had she desired to produce evidence that Cox's injury was attributable only to the May accident, Spangler should have obtained that evidence by asking Cox's treating physicians their opinion, not by attempting to draw speculative inferences from the billing practices of the physicians. Despite Spangler's assumption to the contrary, the total of all bills paid is not necessarily the best indication of the value of medical services provided. See Patterson v. Horton, 84 Wash.App. 531, 543, 929 P.2d 1125 (1997) ("A plaintiff in a negligence case may recover only the reasonable value of medical services received, not the total of all bills paid.") (citing Torgeson v. Hanford, 79 Wash. 56, 58-59, 139 P. 648 (1914)).
Finally, Spangler asserts that the injuries Cox suffered in the November accident were unrelated to her injuries from the May accident. We find no support in the record for this assertion. However, even if there had been evidence that some or all of Cox's injuries were attributable only to the May 1993 accident, Spangler would not have been prejudiced by the trial court's ruling. We say that because, under the trial court's proximate cause jury instruction, benefits that were solely related to the May 1993 accident could not be considered by the jury in the determination of damages.
In sum, Spangler has failed to convince us that the trial court improperly applied the collateral source rule.

III. Burden of Apportioning Damages
As noted above, Spangler also claims that the trial court erred in giving instruction 7, on apportionment of Cox's damages. The instruction is as follows:
If you find that the plaintiff was injured in the accident of May 19, 1993 and the accident of November 2, 1993 and that said accidents caused the plaintiff injury, then the burden of apportioning plaintiff's injuries between the two accidents is upon the defendants. If you further find that plaintiff's injuries are indivisible, then the defendants Spangler are responsible for the entire injury.
*1271 Clerk's Papers at 205; Verbatim Report of Proceedings at 820.
Our review of jury instructions is guided by the familiar principle jury instructions are sufficient if "they allow the parties to argue their theories of the case, do not mislead the jury and, when taken as a whole, properly inform the jury of the law to be applied." Hue v. Farmboy Spray Co., 127 Wash.2d 67, 92, 896 P.2d 682 (1995). On appeal, jury instructions are reviewed de novo, and an instruction that contains an erroneous statement of the applicable law is reversible error where it prejudices a party. State v. Wanrow, 88 Wash.2d 221, 559 P.2d 548 (1977).
Although we agree that the apportionment instruction which Spangler challenges could have been more artfully worded, we conclude that, when it is read in conjunction with the other instructions, it does not misstate the law.[2] The language of the instruction is loosely derived from Phennah v. Whalen, 28 Wash.App. 19, 621 P.2d 1304 (1980), a case in which the plaintiff suffered indivisible injuries in two automobile accidents, that occurred three months apart. Id. at 20, 621 P.2d 1304. The plaintiff then brought suit against the parties who caused each accident. At the conclusion of the presentation of all the evidence, the trial court granted the defendants' motion to dismiss, ruling that the plaintiff's failure to present evidence on the basis of which to segregate damages between the "successive tort-feasors" was fatal to the plaintiff's case. Id. at 21-22, 621 P.2d 1304. The Court of Appeals, Division One, reversed the trial court, saying:
[O]nce a plaintiff has proved that each successive negligent defendant has caused some damage, the burden of proving allocation of those damages among themselves is upon the defendants; if the jury find[s] that the harm is indivisible, then the defendants are jointly and severally liable for the entire harm.
Id. at 29, 621 P.2d 1304.
In support of its ruling, the Phennah court cited RESTATEMENT (SECOND) OF TORTS § 433B (1965). Id. at 28, 621 P.2d 1304. Section 433B provides that:
(1) Except as stated in Subsections (2) and (3), the burden of proof that the tortious conduct of the defendant has caused the harm to the plaintiff is upon the plaintiff.
(2) Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.

(3) Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.
(Emphasis added.) The exception in subsection (2) is grounded in the policy that: "[a]s between the proved tortfeasor who has clearly caused some harm, and the entirely innocent plaintiff, any hardship due to lack of evidence as to the extent of the harm caused should fall upon the former." RESTATEMENT § 433B cmt. d on (2), at 444. Comment c to § 433B(2) makes it clear that subsection (2) does not depend on the joinder of all actors who caused the indivisible harm to the plaintiff.
Spangler claims that the apportionment instruction essentially "direct[ed] the jury to award damages to Plaintiffs for all medical bills incurred after November 2, 1993 and for all other special and general damages which arose from both accidents. The jury had no alternative but to award these damages...." Br. of Appellants at 36. We disagree. Even when read alone, the challenged instruction permitted the jury to find Spangler liable for an injury only if it found the injury to be caused by both accidents. Furthermore, as noted above, we read challenged instructions *1272 in light of the other instructions to the jury. The other unchallenged jury instructions dispel any notion that the jury's verdict was "directed" by the trial court's instructions.
First, instruction 5, the elements of negligence instruction, required the jury to find that Cox had proved that Spangler proximately caused Cox's injuries before awarding her any damages in relation to those injuries.[3] In addition, instruction 10 permitted the jury to hold Spangler liable for the aggravation of a pre-existing injury only to the extent that Spangler's negligence worsened that condition. The instructions permitted the jury to find that Cox's injuries from the May accident were divisible from those she suffered in the November accident. Alternatively, the jury could have found that both accidents combined to cause one divisible injury, or that Cox's injuries were caused solely by the November accident. In no way was the jury "directed" to find Spangler liable for any damages.
Spangler also argues that the Phennah case is distinguishable because it involved two defendants who were held to be jointly and severally liable for causing indivisible injuries. Spangler contends, therefore, that the "entire rationale" of Phennah is "missing" from the present controversy. Br. of Appellants at 36. Spangler is correct in noting that, here, there is no joint and several liability, because Spangler is the only defendant against whom judgment has been entered. See Anderson v. City of Seattle, 123 Wash.2d 847, 852, 873 P.2d 489 (1994) (holding that two or more defendants are necessary for a finding of joint and several liability.) This observation is, however, irrelevant because Phennah does not make joint and several liability a prerequisite to shifting the burden of apportionment. Although the Phennah court discussed joint and several liability, it did so only in distinguishing our earlier decision in Smith v. Rodene, 69 Wash.2d 482, 418 P.2d 741, 423 P.2d 934 (1966).
As here, Rodene was a case in which the plaintiff was involved in two accidents, several months apart. In holding that the trial court improperly shifted the burden of proof to the defendants, this Court placed the burden of apportionment on the plaintiff. Id. at 483-84, 418 P.2d 741. That case is distinguishable from both Phennah and the instant case, in that the Rodene defendants were severally but not jointly liable for the Rodene plaintiffs' divisible injuries. The Rodene court stated that "[t]here was neither concert of action nor independent torts uniting to cause a single injury." Id. at 484 (emphasis added). The court in Phennah thus properly distinguished the Phennah situation from the Michigan case and annotation cited in Rodene, in which joint liability was imposed for indivisible injuries caused by multiple negligent tort-feasors.[4] In those cases, liability was joint and several where the injuries were not segregable. Since the injuries in Rodene did not amount to a "single injury," liability was not "joint." Thus, as the Phennah court points out, the Rodene court "began on the premise of several liability." 28 Wash.App. at 27, 621 P.2d 1304.
In the instant case, on the other hand, Cox's injuries were indivisible between the two accidents and liability for her injuries would be joint and several between Spangler and the co-employee who rear-ended Cox in the May 1993 accident. The Industrial Insurance Act, however, prevents Cox from bringing suit against her co-employee, so Spangler is the only defendant in the instant action.[5] Thus, there is no joint and several *1273 liability in this case. However, the key similarity between the instant case and Phennah is the indivisibility of Cox's injuries. It was because the plaintiff's injuries were divisible that prevented shifting the burden in Rodene. Thus, Rodene is distinguishable from the instant case, and joint and several liability is not the linchpin of the analysis.
Spangler and amici Washington Defense Trial Lawyers also argue that Scott v. Rainbow Ambulance Serv., Inc., 75 Wash.2d 494, 452 P.2d 220 (1969), provides dispositive authority to reverse the trial court. In that case, the plaintiff, Scott, injured her arm when she slipped and fell on a slippery street. As Scott was being wheeled to the ambulance, she fell from the gurney and landed on the left side of her body. Id. at 495, 452 P.2d 220. Scott then sued the Rainbow Ambulance Service for negligence. At the beginning of the trial, Scott's attorney told the trial court that he would not attempt to prove that the fall from the gurney caused his client any injuries. The trial court then promptly granted a defense motion to dismiss. Id. This court upheld the dismissal of Scott's action, reasoning that "[w]hen the facts of the case are such that plaintiff is clearly one of the two persons responsible for the injury involved, and plaintiff makes no attempt to segregate those damages, we find no over-riding reason in justice for shifting that burden of proof to the defendants." Id. at 498, 452 P.2d 220. In short, because Scott was negligent, no policy supported awarding her a windfall.
Here, there was no evidence that Cox had any culpability for the May accident. Nor did Spangler request a jury instruction on comparative negligence. Furthermore, the burden of pleading and proving the plaintiff's negligence is on the defendant. Godfrey v. State, 84 Wash.2d 959, 965, 530 P.2d 630 (1975). Neither Spangler nor the Washington Defense Trial Lawyers Association can raise on appeal what was not litigated in trial. Smith v. Shannon, 100 Wash.2d 26, 666 P.2d 351 (1983). Consequently, for purposes of this appeal, we presume that Cox was without fault in the first accident. Thus, the negligent plaintiff rule announced in Scott is not dispositive in this case, and we express no opinion on that decision.
In sum, when all of the jury instructions are examined, it is apparent that Spangler's only burden was to apportion the damages for injuries that Spangler proximately caused and that could not be attributed solely to the May accident. She clearly did not meet that burden, her own witness, Dr. Cooper, testifying that all of Cox's injuries were either caused or aggravated by the November accident. We are satisfied, therefore, that the injuries were not segregable, and the RESTATEMENT § 433B(2) burden-shifting scheme applies, just as it was applied to the slightly different, multiple defendant, situation in Phennah v. Whalen. It was not error to give the apportionment instruction.

IV. Conclusion
For reasons stated above, we conclude that the trial court did not err in excluding evidence regarding the industrial insurance benefits Cox received following the November accident or in giving jury instruction number 7. We, therefore, affirm the judgment of the trial court.
GUY, C.J., SMITH, JOHNSON, MADSEN, TALMADGE, SANDERS, IRELAND, and BRIDGE, JJ., concur.
NOTES
[1] Instruction 6 defined "proximate cause" to be: "a cause which in a direct sequence, unbroken by any new independent cause, produces the injury complained of and without which such injury would not have happened." Clerk's Papers at 204.

Instruction 9 read:
If you find that before this occurrence the plaintiff had a pre-existing bodily condition which was not causing pain or disability and further find that because of this occurrence that condition was lighted up and made active or that the condition made the plaintiff more subject to injury than a person in normal health, then, if your verdict is in favor of the plaintiff, you should consider the lighting up of the condition and all injuries and damages which were proximately caused by the occurrence, even though those injuries, due to that condition, may have been greater than those which would have been suffered by a normal person under the same circumstances. Clerk's Papers at 206.
Instruction 10 read:
If you find that before this occurrence the plaintiff had a pre-existing bodily condition which was causing pain or disability, and further find that because of this occurrence the condition or the pain or the disability was aggravated, then you should consider the aggravation of the condition or the pain or disability proximately due to such aggravation, but you should not consider any condition or disability which may have existed prior to the occurrence or from which plaintiff may now be suffering which was not caused or contributed to by reason of the occurrence. Clerk's Papers at 207.
[2] Admittedly, the first sentence of the challenged instruction is not entirely clear. We believe the instruction was meant to read "and that said accidents caused the plaintiff [one] injury" or "[a single] injury." For purposes of this opinion, however, only the sentence that shifts the burden of apportionment onto Spangler upon a finding of indivisible injury is relevant.
[3] Instruction 5 read, in pertinent part:

The court has previously determined that the defendants are liable for any injury which was proximately caused by the November 2, 1993 motor vehicle accident.
The plaintiff has the burden of proving each of the following propositions:
First, that the plaintiff was injured;
Second, that the negligence of the defendants was a proximate cause of injury to the plaintiff. Clerk's Papers at 203.
[4] See Maddux v. Donaldson, 362 Mich. 425, 108 N.W.2d 33, 100 A.L.R.2d 1 (1961); D.E. Buckner, Annotation, Apportionment of Damages Involving Successive Impacts by Different Motor Vehicles, 100 A.L.R.2d 16 (1965) (see especially § 6).
[5] RCW 51.04.010 abolishes all common law causes of action by an employee against another employee for injuries received in the course of employment.